## J. S. DOOLITTLE, *et al.,* v. A. T. & SANTA FÉ RAILROAD COMPANY.

1. COUNTY TREASURER; *Presumption, in Case of Death.* Where a county treasurer dies while in office, it will be presumed, in the absence of anything to the contrary, that everything belonging to his office, including money, was in the office at the time of his death; but where his successor in office, on taking possession of the office, finds that more than $11,000 belonging to the various funds of the office is missing, and cannot be accounted for, such presumption is effectually overthrown; and where, in addition to the foregoing facts, it appears that such late treasurer received certain money, and failed to keep any account thereof in the records of his office, and there is nothing whatever in the office tending to show that said money was ever received by him, it will be presumed, in the absence of anything to the contrary, that said treasurer converted said money to his own use at the time he so received it.

2. ———— *Successor in Office; Presumption.* And where, in addition to the foregoing facts, the successor in office receives $1,400 as belonging to the office, and as coming from his predecessor, and does not know to

what fund or funds such money belongs, but apportions it to the various county, township and school-district funds, in which funds there is still left a deficiency of over $11,000, *held,* that in the absence of anything to the contrary, and as against the sureties of said predecessor, who are sued on the official bond of their principal for his defaults, it will be presumed that said apportionment was correct.

3. ———— *County Funds; Administrator of Deceased Treasurer.* Where a county treasurer dies, the money belonging to his office does not go to his administrator, but goes to his successor in office; and in the absence of any showing that the administrator has meddled with anything belonging to the office, it will not be presumed that he has done so.

4. CROSS-EXAMINATION; *Immaterial Testimony.* The county treasurer having died a defaulter, his administrator paid to Howard, the late treasurer's successor in office, $1,400 belonging to the office, which still left a deficiency of over $11,000 not accounted for. Howard not knowing to what fund or funds this $1,400 belonged, apportioned it to the various county, township and school-district funds, and did not apportion any part thereof to a certain "condemnation" fund, of which he should have had charge. The sureties of said defaulting treasurer were afterward sued by the party entitled to said "condemnation" fund. Howard was placed on the witness stand by the plaintiff, and testified that he had never received any of said "condemnation" money. The defendants then on cross-examination asked him what if anything was said by the person or persons paying him said $1,400 in reference to the money. The plaintiff objected, on the ground that the evidence, which the question called for, was "incompetent, irrelevant and immaterial," and the court sustained the objection, and excluded the evidence. *Held,* Error; but under the circumstances of this case the error was immaterial.

### Error from Chase District Court.

ACTION by the *Railroad Company,* against *J. S. Doolittle, A. J. Crocker,* and *C. A. Britton,* who were the sureties on the official bond of U. B. Warren, as county treasurer of Chase county. Warren, as such treasurer, on the 5th of December 1870, received from the *Railroad Company* the sum of $577.52, as condemnation money duly paid to him upon the award of commissioners for the right-of-way through land belonging to one J. R. Blackshire. Blackshire appealed from this award, and recovered a judgment for a much larger sum, which was afterward fully paid by defendant in error. (See cases of *A. T. & Santa Fé Rld. Co. v. Blackshire,* 10 Kas. 477, and

*Blackshire v. A. T. & Santa Fé Rld. Co.*, 13 Kas. 514.) On the 13th of February 1872, said Warren died, while in possession of said office. One A. S. Howard was duly appointed his successor, and duly qualified and acted as such. Margaret Kellogg and W. S. Romigh were the duly appointed, qualified and acting administratrix and administrator of the estate of Warren. Warren, in his lifetime having never paid out this condemnation money to any one, this action was brought against his sureties on said official bond, and against said estate, to recover said condemnation money, the *Railroad Company* claiming that the said Warren in his lifetime converted said money to his own use, and that the same was not paid over by any one to his successor in office. The case was tried at November Term 1876. Judgment was rendered against the defendants for the sum of $613, and costs. New trial refused, and defendants bring the case here on error.

*Sterry & Sedgwick*, for plaintiffs in error.

*Ross Burns*, and *J. G. Waters*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action against the sureties on the official bond of U. B. Warren, late treasurer of Chase county. Judgment was rendered in the court below in favor of the plaintiff and against the defendants for $613, and costs, and the defendants now as plaintiffs in error bring the case to this court. Plaintiffs in error raise two principal questions in this court. First, they claim that the finding and judgment of the court below are not sustained by sufficient evidence; and second, they claim that the court below erred in excluding certain evidence. We shall consider these questions in their order.

I. We think the finding and judgment of the court below are amply sustained by sufficient evidence. Everything necessary to enable the plaintiff to recover, except merely the alleged breach of said bond, was admitted by the parties.

And many of the facts tending to establish said alleged breach, were also admitted. Thus, it was admitted that the treasurer received the money for which this suit was brought; that he never paid it out to any person authorized to receive it; that he died 12th February 1872; that A. S. Howard was his immediate successor in office; that Howard qualified, and took possession of the office, about the 1st of March 1872; that at that time there was nothing in the treasurer's office showing or tending to show that Warren had ever had or received said money; and that the records of the office then showed that Warren was behind in the various funds of his office about $11,000 more than Howard ever received. The evidence showed that Howard received only $1,400 in money as coming from his predecessor. There was nothing to show to what fund or funds even this belonged; but Howard apportioned it to the various funds of the county, township, and school districts. We think the foregoing facts make out a *prima facie* case in favor of the plaintiff. Of course, it would be presumed, in the absence of anything to the contrary, that when Warren died everything belonging to the office, money and all, was in the office. But the contrary was made sadly to appear in the present case. More than $11,000 in money was missing. The treasurer's records showed that that amount was gone, and the records were wholly silent as to the money now sued for in this action. As to the $1,400 received by Howard, it will be presumed, as there was nothing shown to the contrary, that it belonged to some fund or funds to which the records showed money belonged; and it will not be presumed that it belonged to some fund concerning which the records were wholly silent. The treasurer would not be as likely to allow money to be wrongfully taken from the treasury where the records showed that he had the money in his possession, as where the records did not show any such thing. It will also be presumed, as nothing appears to the contrary, that Howard apportioned said $1,400 correctly. The defendants certainly have no right to complain that he did not. For *first,* they are liable

for the whole amount for which their principal, Warren, may ultimately be found to be in default, to whatever fund or funds such amount may belong; and *second*, it was the fault of their principal which has caused all the trouble and difficulty in making a correct apportionment. Even if this apportionment were incorrect, it would really make but little difference to the defendants, and no difference which any rules of equity or justice could recognize; and they should not be allowed to get an unjust advantage of others merely because of the fault or wrongdoing of their principal. It would be strange if a county treasurer, by creating uncertainties as to which of the various funds of his office a certain small sum of money belonged, could thereby make such small sum extinguish all the liabilities of his sureties for any deficiencies which might be created at any time in any or all of such funds. It would be strange if, in such a case, the sureties could say, when sued for a deficiency in one of such funds, that said small sum of money might have belonged to that fund, and then when sued for a deficiency in another of such funds that it might have belonged to that—and so on, through all the various funds—thereby defeating all actions which might be brought against them for deficiencies in any of such funds, and thereby making such small sum of money (say $1,400) pay a vast number of deficiencies amounting in the aggregate, it might be, to many thousands of dollars. Said $1,400 received by Howard has already extinguished $1,400 of the liability of the defendants, and they now desire that it shall extinguish $613 more, (the amount for which judgment was rendered against them in this case;) and if they should be again sued for a deficiency in some other fund they would then of course want to extinguish still more of their liability, and so on until it should extinguish the whole of their liability for said $11,000 still remaining unpaid.

It will also be presumed from the facts in this case that Warren converted the money, for which this suit is brought, to his own use, as soon as he received it. The law requires that a county "treasurer shall keep a just and true account

of the receipts and expenditures of all moneys which shall come into his hands by virtue of his office, in a book or books to be kept by him for that purpose." (Gen. Stat. 269, § 67.) Warren never kept any such account of the money sued for in this case. He never recognized any such money (so far as his records show) as belonging to his office, but presumably put it into his pocket as soon as he received it, and used it as his own.

There was a great deal of other evidence introduced in this case tending to prove the plaintiff's case, but we have not thought it necessary to state it.

The plaintiffs introduced two of the administrators of the estate of said Warren, as witnesses, to prove that they did not receive said money; but both parties failed to introduce as a witness one Mrs. Margaret Kellogg, who had been previously appointed as an administratrix, to act in connection with one F. B. Hunt, administrator, in settling said estate. The defendants therefore now claim that the plaintiff failed to make out a case because, as they say, Mrs. Kellogg might have received said money. Now there was not the slightest evidence introduced tending to show that Mrs. Kellogg ever received any money or property belonging to the county treasurer's office. And it will not be presumed that she did. She had no right to receive any such money or property, or even to meddle in any manner with the county treasurer's office. The funds in the county treasurer's office belong to the office, and not to the administrator of the estate of the deceased treasurer. The treasurer himself, before his death, did not own such funds in his individual capacity, and had no right to use them in any manner except as provided by law. In the absence of evidence it will be presumed that Mrs. Kellogg did not meddle with the county treasurer's office. And therefore it was unnecessary to introduce her as a witness.

II. We shall now proceed to consider the second question raised by the defendants below. The money sued for in this action was money deposited by the Atchison, Topeka & Santa Fé Railroad Company with said U. B. Warren, treasurer of

Chase county, for J. R. Blackshire, to pay for damages accruing by reason of certain condemnation proceedings. (For further facts with reference to this money, see *A. T. & S. F. Rld. Co. v. Blackshire*, 10 Kas. 477; *Blackshire v. A. T. & S. F. Rld. Co.*, 13 Kas. 514.) Said A. S. Howard was introduced as a witness by the plaintiff below. He testified that, as the successor in office of said Warren, he had not received any such money. Afterward, on cross-examination, he testified that he had received $1,400 from Brockett, or Hunt, as money belonging to the treasurer's office. The defendants then put the following questions to the witness, to-wit:

"State what, if any, fund or funds the parties paying this sum of money to you told you it belonged to?"

"State, at the time this money was paid to you, what if anything was said to you by the person or persons so paying it, in reference to this money?"

Both of these questions were objected to by the plaintiff below, on the grounds that the evidence they called for was "incompetent, irrelevant and immaterial;" and the objections were sustained, and the evidence excluded. It was afterward shown that this money was received from F. B. Hunt, the first administrator of the estate of said Warren; that Howard did not *know* to what fund or funds it belonged; and in answer to a question as to whether he *knew of his own knowledge* to what fund this money belonged, he stated that he "could never find out," but thought it was "not condemnation money." He apportioned it, as we have already stated, to the various county, township, and school-district funds. Hunt was also introduced as a witness, and testified that he paid said money to Howard; but he did not state whether he knew to what fund or funds it belonged, or not. We think the court below erred in sustaining said objection, and in excluding said evidence; but we do not think that the error was material or substantial under all the circumstances of this case. It was error to exclude said evidence, because, as we think, it was a legitimate subject of cross-examination. Howard had already testified, on his direct examination, that

he had not received *any of said condemnation money*. And now it was proposed to show on cross-examination that he had, or at least, that he might have done so. It was admitted that he had received over $1,400 belonging to the county treasurer's office. Said condemnation money, when paid to Warren, amounted to only $577.52. Now may not a part of said $1,400 have been said condemnation money, or a part thereof? Howard, in substance, said that it was not. Now, how did he know? What *was said* to him, when he received it? May not Hunt when he paid it to Howard have said, "Here is $1,400 belonging to the county treasurer's office; $577.52 of which is condemnation money, paid by the Atchison, Topeka & Santa Fé Railroad Company to U. B. Warren, late county treasurer, in trust for the use of J. R. Blackshire. I found it in the county treasurer's office, in a separate package, labeled as such condemnation money; I received it as such, *and now pay it to you as such*." Such declarations of Hunt, being cotemporaneous with the payment of said money, and tending to explain and qualify the same, being a part of the *res gesta*, would have been competent evidence, not of themselves sufficient to prove that the facts which they mention were true—not of themselves sufficient to prove that any part of said $1,400 was "condemnation money"— but as notice of these facts to Howard if they had been otherwise proved to exist, or as corroborating evidence, if other evidence had been introduced tending to prove these facts, or as evidence tending to identify this money, if it had been shown by other evidence that such money was still in existence. But there was no evidence tending to prove any of said facts, or tending to show that said money was still in existence. And the evidence that said money was not still in existence, and that Warren had converted it to his own use in his lifetime, was so strong, that no evidence of mere statements made by Hunt could have the effect to overturn the *prima facie* case made out by the plaintiff below. As the defendants are liable for the whole of said $11,000, as Howard apportioned said $1,400 the best he knew, and as

there is no evidence tending to show that said apportionment is erroneous, no evidence of mere statements of Hunt can overturn such apportionment. For these reasons we think the error of the court below in excluding said evidence, is immaterial.

The doctrine of application of payments, as between debtor and creditor, probably has no application to this case. But as to such doctrine, see *Shellabarger v. Binns*, 18 Kas. 345.

We decide this case upon the theory that the sureties of Warren, as treasurer, were in effect insurers, as to the safe-keeping, in the proper place, of all moneys intrusted to him as treasurer, until his death, and that then they ceased to be such insurers. And therefore, if Warren, as treasurer, did not have said condemnation money when he died, the sureties are liable; but if he did have it at that time, then they are not liable. Now as he did not have it at that time we must hold that the sureties are liable.

The judgment of the court below will be affirmed.

All the Justices concurring.