ATLANTA AND WEST POINT RAILROAD COMPANY *v.* ATLANTA, BIRMINGHAM AND ATLANTIC RAILROAD COMPANY.

1. The courts will take judicial notice of a charter granted to a railroad company by the secretary of State under the general law providing for the incorporation of such companies.
2. A railroad company incorporated under the general railroad law may institute condemnation proceedings to acquire the property of another railroad company, if the property sought to be condemned is not in actual use for railroad purposes by the company owning the property, and is not necessary to the present needs of such company. Property acquired and held by a railroad company in anticipation of future needs, and not used and not shown to be needed for present use by such railroad company, stands upon the same footing as ordinary private property, so far as the right of another railroad company to condemn it for railroad purposes is concerned.
3. When in a proceeding by one railroad company to condemn the property

of another railroad company it appears that the property sought to be . condemned is not actually used by the railroad company which owns it for railroad purposes and is not presently needed for such purposes, the right of condemnation will not be defeated merely because it appears that . at some time in the future such property will be needed by such railroad company for railroad purposes. In such a case the future needs of the first company must yield to the present lawful needs of the second company. .

4. No sufficient reason appears for reversing the judgment refusing to grant the injunction.

Argued October 4,—Decided November 9, 1905.

Petition for injunction. Before Judge Pendleton. Fulton superior court. June 30, 1905.

This was an application for an injunction by the Atlanta and West Point Railroad Company, hereinafter referred to as the West Point Company, against the Atlanta, Birmingham and Atlantic Railroad Company, hereinafter referred to as the Birmingham Company, to prevent the latter company from condemning, for use as a part of its main line, property in the city of LaGrange, Troup county, owned by the former company. The judge refused to grant the injunction, and the West Point Company excepted. It is averred in the petition, that the West Point Company is one of the oldest railroads in the State, and for a period of more than half a century has operated a line of railroad from Atlanta to West Point; that it is operated in connection with the Western Railway of Alabama, which operates a line of railway from West Point to Opelika, Alabama; that the business of the company has increased from year to year, and it now does a large volume of business; that it has heretofore operated the line from Atlanta to Opelika as one division, but the local business between these points has so largely increased that it has become necessary to divide this division into two divisions, one from Atlanta to LaGrange, and the other from La Grange to Opelika; that the creation of these two divisions will necessitate the extension of its yard, and the enlargement of its terminal facilities at LaGrange, which will bring about a change of its depots, both passenger and freight, at that point; that, in anticipation of this, the company secured lands adjacent to its present property in the city of LaGrange, to be used in the enlargement of its terminals, and it has now a complete plan as indicated by a map which is attached to the petition, which requires the use of this additional property so acquired; that while this additional property is not now actually

in use, the plan contemplating its use has been perfected, and arrangements have been made to carry into effect this plan which is absolutely essential to the proper conduct of its business as a common carrier; that the Birmingham company is a corporation under the laws of this State, "recently incorporated," authorized to construct a railroad from Montezuma, Ga., to Birmingham, Ala., and from Atlanta, Ga., to Wedowee, Ala., and this company has served a notice of its intention and purpose to condemn a portion of the property which the West Point company acquired for its terminal facilities in the city of LaGrange; that the acquisition of this property is not necessary for the carrying out of the purpose for which the Birmingham Company was incorporated, and the taking of the property would seriously impair the ability of the West Point Company to discharge those duties imposed upon it under its charter as a common carrier; and that the Birmingham Company has no authority under the law to take the property of the West Point company. The answer of the Birmingham company sets up that the property which it seeks to condemn has never been devoted by the West Point company to any public use, and it will not be necessary to the proper exercise of the duties imposed upon the West Point company to use the property sought to be condemned; and it is distinctly alleged that this property can be taken without in any way impairing, embarrassing, or materially affecting the West Point Company in the transaction of any of the business which it has or which it may reasonably expect to have in the near future. At the hearing numerous affidavits were introduced by both parties on the various questions raised by the pleadings. The bill of exceptions assigns error on the refusal to grant the injunction, and also upon a number of rulings made by the judge on the admissibility of evidence.

*Dorsey, Brewster & Howell,* for plaintiff.   *J. L. Sweat, Rosser & Brandon,* and *Hatton Lovejoy,* for defendant.

Cobb, P. J.   1. The charter of the Birmingham company does not appear in the pleadings. The petition alleges that it is a corporation of this State "recently incorporated." It is well settled in this State that the courts will take judicial cognizance of the powers of a railroad company incorporated under an act of the General Assembly. The law requires the acts to be deposited in the office

of the secretary of State, and the court notices without proof the contents of all acts that are so deposited. Since the power to incorporate a railroad company has been taken away from the General Assembly and conferred upon the secretary of State, the law requires that the application for a charter and the charter itself shall be recorded in the office of the secretary of State. If the court can judicially notice a charter granted in an act of the General Assembly, which is merely required to be deposited in the office of the secretary of State, we see no reason why like notice should not be taken of a charter granted under a general law which requires the application as well as the charter itself to be recorded in the office of that officer. It has been held that where an act of the General Assembly requires the Governor to issue a proclamation, the courts will take judicial notice of the contents of that proclamation as it appears upon the minutes of the executive department. *Ragland* v. *Barringer*, 41 *Ga.* 114.

2. Under the general law for the incorporation of railroads a railroad so incorporated is authorized—"To acquire, purchase, hold, and use all such real estate and other property as may be necessary for the construction and maintenance of said road, and the stations, wharves, docks, terminal facilities, and all other accommodations necessary to accomplish the object of said corporation, and to condemn, lease, or buy any land necessary for its use. . . To cross, intersect, or join or unite its railroads with any railroad heretofore or hereafter to be constructed, at any point in its route, or upon the ground of any other railroad company, with the necessary turnouts, sidings, and switches, and other conveniences necessary in the construction of said road, and may run over any part of any railroad's right of way necessary or proper to reach its freight-depot, in any city, town, or village through or near which said railroad may run, under the limitations hereinafter named; but in crossing another railroad, either over, under, at grade, level or otherwise, it shall be at the expense of the company making the crossing, and in such way and manner, at the time of construction, as not to interfere with said railroad in its regular travel or business." Civil Code, §2167, pars. 3, 6. "In the event any company does not procure from the owner or owners thereof by contract, lease or purchase, the title to the lands or right of way or other property necessary or proper for the construction or connection of said railroad and its branches or

extensions, or its depots, wharves, docks, or other necessary terminal facilities, necessary or proper for it to reach its freight or passenger depot, in any city, town, or village in the State, as hereinafter provided, said corporation may construct its railroad over any lands belonging to other persons, or over such rights of way or tracks of other railroads as aforesaid, upon paying or tendering to the owner thereof, or to his or her or its legally authorized representative, just and reasonable compensation for said lands or said right of way. When the compensation is not otherwise agreed upon, it shall be assessed and determined in the manner provided in this Code." Civil Code, §2170.

The power of condemnation conferred by the foregoing provisions of law may be exercised by a railroad company to appropriate to its use not only the property of an individual, but also the property of a corporation. The property of another railroad company may be condemned if the property thus sought to be acquired is not actually used by the other company for railroad purposes, and will not be needed by that company for such purposes in the immediate future. Property owned by a railroad company, which it does not use for railroad purposes, and which will probably not be needed in the near future for such purposes, so far as the right of another railroad company seeking to condemn it is concerned, stands upon the same footing as other property not dedicated to a public use. Property so held by a railroad corporation is private property owned for private purposes. It is not at all impressed with a public use and is subject to be taken, under the exercise of the right of eminent domain, under the same circumstances that the property of a private individual may be so taken. Where the property is already in use for railroad purposes, or where it is manifest that it will be presently needed by the corporation to carry fully into effect the purposes of its creation, then the right of another railroad company to acquire it by condemnation is subject to restrictions which are not applicable where the property is not actually in use or needed for present use. Where property is already dedicated to a public use, it may, under the exercise of the power of eminent domain, be subjected to another use, but with the restriction that it can not generally be so subjected if the second use either destroys or seriously impairs the first use. A condemnation having such an effect can only be had when there is express, unequivocal legislative

authority permitting it. A general legislative authority to condemn will not be construed to give power to take when such taking will be inconsistent with a prior public use to which the property has been dedicated. Under a general power to condemn property a railroad company can not condemn the property of another company, already used by it for railroad purposes, when the effect of such condemnation would be to destroy the use of the property by the former company, or to seriously impair the rights of the former company therein. *City Council* v. *Ga. R. Co.,* 98 *Ga.* 161.

Under a general power to condemn, one railroad company can not acquire property of another railroad company, already set apart for use as a depot, or as a yard for the drilling of cars, when it is manifest that the appropriation by the second company would be either to destroy the rights of the first company, or seriously impair the first company in the use of its property for the purpose for which it was set apart. Where a company has acquired property for the purpose of enlarging its depot or its yard or its terminal facilities, and is presently proceeding to adapt such newly acquired property to the use for which it was acquired, such newly acquired property would under such circumstances, as to the rights of another company to condemn, be fully safeguarded by the same restrictions as if the plans which were actually in progress had become completed when the condemnation proceedings were instituted. But where a railroad company in anticipation of its future needs acquires property, and it is not in use and not presently needed and it is merely held to be used in the future at such times as the needs of the company may require it, the right of condemnation exists in favor of another company, which can only be defeated by showing that the condemnation would interfere with a present necessity of the company which owned the property.

3. The evidence authorized a finding by the judge, not only that the property sought to be condemned was not actually used by the West Point Company for railroad purposes, but that it would not be needed by it for such purposes at any time in the near future. Upon the latter point the evidence was conflicting; but the judge could find, and no doubt did find, from the evidence that the property was purchased for future use, and that the present needs of the West Point company were not such as to require it to be used for railroad purposes. Under such circumstances the future needs of the com-

pany must yield to the present lawful needs of the new company seeking a right of way through the city of LaGrange.

4. The bill of exceptions contains numerous assignments of error upon rulings made by the judge upon the admission and rejection of evidence, but none of these are of such a material nature as to require discussion in the light of what has. been said in the preceding portion of this opinion. There was no evidence to authorize a finding that the Birmingham Company had located its line otherwise than in good faith for the purpose of carrying out the object of its incorporation, which was to serve the public in the most satisfactory way that a railroad corporation could render that service, and incidentally to reap such benefit from that service as is always contemplated shall flow as a compensation for the service rendered. We see no reason for reversing the judgment refusing to grant the injunction prayed.

*Judgment affirmed. All the Justices concur.*