[Civil No. 2558. Filed May 9, 1927.]

[255 Pac. 1092.]

J. L. CHAMBERS, Appellant, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, a Corporation, Appellee.

Mr. C. W. Herndon, for Appellant.

Mr. L. L. Wallace, for Appellee.

McALISTER, J.—The Atchison, Topeka & Santa Fé Railway Company filed an action against J. L. Chambers, praying that its title to 5.38 acres of land located in Mohave county be quieted. From a judgment granting its prayer and a denial of defendant's motion for a new trial, he prosecutes this appeal.

The complaint and answer contained the allegations ordinarily found in an action of this character, and the evidence discloses that the land in question has been claimed by the railway company, or those through whom its title came, since 1883, when this portion of the railroad was completed and the necessary steps taken to complete its title. A conflict in ownership arose, however, because the United States, under date of June 24th, 1925, issued to defendant a patent to certain public lands which included within its terms this particular acreage, notwithstanding the alleged grant in 1883 to one of plaintiff's predecessors in interest. One of two patents delivered to defendant in 1925 conveyed lots 1, 8, 9, 10, 15 and 16 of section 18, township 21 north of range 16 west of the Gila and Salt river meridian, containing 240 acres, and the other the east one-half of the same section. The 5.38 acres in question is a part of said lot fifteen, and, since 1921, when he made his filing, his home has been located on this lot about one-half mile from Louise Station, though it does not appear that it is upon the disputed acreage.

To prove its title, plaintiff introduced in evidence a certified copy of a map filed in the General Land Office in 1883 by the Atlantic & Pacific Railroad Company. This filing was made in accordance with the provisions of an act of the Congress of the United States, passed in 1866, incorporating the Atlantic & Pacific Railroad Company, and providing for a grant to that company of a right of way, station grounds

and certain sections of public land to aid in the construction of a railroad from Missouri and Arkansas to the Pacific Coast, and the evidence discloses that the disputed acreage lies within the exterior boundaries of what is delineated on this map as Beale (now Louise) station grounds. It further appears from the record that, through various mesne conveyances, the complete holdings of the Atlantic & Pacific Railroad Company became the property of plaintiff herein, the Atchison, Topeka & Santa Fé Railway Company, on July 1st, 1903, and that they have remained such since that time.

Upon these facts the court found that the plaintiff is now and has been for many years past the owner and entitled to possession of the land in question, and that defendant, who has been upon and in possession of it since 1921, has no claim whatsoever thereto, and entered judgment accordingly.

In asking for a reversal of the judgment appellant assigns three errors, but they raise only one question, and that is that there is nothing in the record showing that appellee or any of its predecessors in interest has ever had any title to the disputed acreage, for the reason that no instrument evidencing the passing of title from the government to the Atlantic & Pacific Railroad Company or anyone else other than appellant was introduced in evidence. Appellee took the position that the act of Congress above mentioned was a "grant" of this land to one of its predecessors in interest, but, being of the view that it was a public act, and that the court would take judicial notice of its provisions (23 C. J. 128, par. 1947), did not make it a part of the record, while appellant contends that, regardless of the fact that it may have constituted a grant, it cannot be considered, because it is a private act, and courts do not notice these judicially. Inasmuch, therefore, as the courts do not take judicial notice of the private

acts of Congress, unless perhaps they have been referred to and recognized by Congress itself in some later public statute (23 C. J. 136), but do of its public acts, the only question presented by the record is whether the act in question is a public or private statute within the meaning of the rule pertaining to judicial notice.

This act was enacted in 1866, and is printed in volume 14, page 292, Statutes at Large, as one of the Public Acts and Resolutions of the Thirty-ninth Congress. It creates and erects certain persons into a body corporate under the name of the "Atlantic & Pacific Railroad Company," and confers upon it the usual powers of such a body. It authorizes this corporation to construct a continuous railroad and telegraph line from near Springfield, Missouri, to the Pacific Coast, and grants it a right of way through the public lands and also certain sections of public land on either side thereof throughout its length, to aid in its construction and to secure the safe and speedy transportation of mails, troops, munitions of war and public stores. It confers upon the corporation the powers of eminent domain, gives every person the right to subscribe to its stock, and provides that it shall be subject to the use of the United States for postal, military, naval and other governmental services and to the regulations of Congress restricting the charges therefor. Section 20 is in this language:

"And be it further enacted, that the better to accomplish the object of this act, namely, to promote the public interest and welfare by the construction of said railroad and telegraph line, and keeping the same in working order, and to secure to the government at all times, but particularly in time of war, the use and benefits of the same for postal, military, and other purposes, Congress may, at any time, having due regard for the rights of said Atlantic &

Pacific Railroad Company, add to, alter, amend, or repeal this act.''

Section 21 (U. S. Comp. Stats., § 10059) contains the general provision that:

"Whenever in any grant of land or other subsidies, made or hereafter to be made, to railroads or other corporations, the United States has reserved the right, or shall reserve it, to appoint directors, engineers,'' etc., '' . . . all the costs, charges, and pay of said directors, engineers,'' etc., '' . . . shall be paid by the respective companies. Said directors, engineers,'' etc., '' . . . shall be paid for said services the sum of ten dollars per day, for each and every day actually and necessarily employed, and ten cents per mile,'' etc., '' . . . in discharging the duties required of them. . . . ''

An act of Congress containing such provisions as these can in no sense, it occurs to us, be regarded as a private statute, and we have been cited to no authority holding that way. Its contents are such that its public character is perfectly evident. In fact, it will be observed that one of its provisions refers to the object of the act as the promotion of the public interest and welfare, and the donation of a right of way, station grounds and so many sections of public land throughout its length, from Missouri to the Pacific Coast, to aid in its construction in order that the handling of the mails, soldiers and military supplies might be facilitated thereby, clearly indicate that its passage was prompted, in large part at least, by the public good. The publishers of volume 14 of the Statutes at Large in which it appears did not consider it as a private act because they did not print it among those acts and resolutions of the Thirty-ninth Congress that they classed as private but treated it as a public statute by placing it in a separate part of the volume among those designated as public. The weight of authority is clearly to the effect that such acts are considered

as public so far as judicial notice is concerned. "Although banks and railroad companies are corporations organized for private gain," says Jones on Evidence, volume 1, page 697, "their charters generally contain provisions which directly or indirectly affect the entire community; such charters are, by the weight of authority, public acts, of which the courts take cognizance. . . . The contrary rule has been maintained in other cases. The weight of authority, however, is clearly in favor of regarding such acts as public, and apart from authority altogether the courts are taking the broad, common-sense view that, where the rights of the public may be involved, judicial notice should be extended."

Such was the view of the Supreme Court of Washington, as disclosed in *Northern Pacific Ry. Co.* v. *Wadekamper,* 70 Wash. 392, 126 Pac. 909, in which it held that the act of Congress of 1864 creating the Northern Pacific Railroad Company, the language thereof being practically identical with that in question, should be judicially noticed. It said:

"This court will take judicial notice of Act Cong. July 2, 1864, 13 Stat. at Large, p. 365, creating the Northern Pacific Railroad Company, and granting it lands in aid of construction and a right of way over the public lands."

In *Commonwealth* v. *Kinniconick & F. S. R. Co.* (Ky.), 104 S. W. 290, the Supreme Court of Kentucky said:

"We must take judicial knowledge that it was incorporated under an Act approved March 20, 1890 (1 Acts 1889–90, p. 734, c. 373), entitled 'An act to incorporate the Kinniconick & Freestone Railroad Company,' and that it has the powers conferred upon it by the act."

In *State* v. *Briscoe,* 6 Penne. (Del.) 401, 67 Atl. 154, the court said:

"The Wilmington City Railway Company is a corporation of this state, created by a public act of the Legislature, and the state is not, therefore, required to prove that it is a corporation."

In *Pennsylvania Ry. Co.* v. *Baltimore & N. Y. Ry. Co.* (C. C.), 37 Fed. 129, the court made this reference to an act of Congress authorizing a railroad to build a bridge across the waters of the Arthur Kill, a portion of Staten Island Sound:

"Although it does not appear by the complaint that the defendants were authorized by an act of Congress to build and maintain a bridge over the Arthur Kill, the court must take judicial notice that they were."

In *Matter of Dunn*, 212 U. S. 374, 53 L. Ed. 558, 29 Sup. Ct. Rep. 299 (see, also, Rose's U. S. Notes), the Supreme Court of the United States, in discussing the necessity of averring the corporate character of the defendant, a railway company incorporated by an act of Congress, used this language:

"Although the plaintiffs in their original petition in the state court state that the railway company was a corporation, duly incorporated, with an office and local agent in Dallas county, Texas, the fact that the corporation was incorporated by an act of Congress will be noticed by the court, even without an averment of that fact in the petition."

In *Atlanta & W. P. R. Co.* v. *Atlanta, B. & A. R. Co.*, 124 Ga. 125, 52 S. E. 320, the Supreme Court of Georgia, contrary perhaps to the general rule, held that the courts of that state take judicial notice of a charter of a railroad company incorporated under a general law of the legislature, giving its reasons therefor in the following language:

"The charter of the Birmingham Company does not appear in the pleadings. The petition alleges that it is a corporation of this state 'recently incorporated.' It is well settled in this state that the

courts will take judicial cognizance of the powers of a railroad company incorporated under an act of the General Assembly. The law requires the acts to be deposited in the office of the secretary of state, and the court notices without proof the contents of all acts that are so deposited. Since the power to incorporate a railroad company has been taken away from the General Assembly and conferred upon the secretary of state, the law requires that the application for a charter and the charter itself shall be recorded in the office of the secretary of state. If the court can judicially notice a charter granted in an act of the General Assembly, which is merely required to be deposited in the office of the secretary of state, we see no reason why like notice should not be taken of a charter granted under a general law which requires the application as well as the charter itself to be recorded in the office of that officer. It has been held that where an act of the General Assembly requires the Governor to issue a proclamation, the court will take judicial notice of the contents of that proclamation as it appeared upon the minutes of the executive department.''

The court was right, therefore, in taking judicial notice of the act of Congress incorporating the Atlantic & Pacific Railroad Company and in holding that the grant contained therein had the effect of withdrawing from the lands subject to public entry all that described in the map showing compliance with its terms, a part of which was the acreage involved in this action, the evidence having disclosed that it lies within the exterior boundaries of the Beale station grounds as delineated thereon. This grant had the same effect as a patent; hence the fact that one was not issued to the Atlantic & Pacific Railroad Company by the government is immaterial. ''The approved map,'' said the court in *Great Northern Ry. Co.* v. *Steinke,* 261 U. S. 119, 67 L. Ed. 564, 43 Sup. Ct. Rep. 316, ''is intended to be the equivalent of a patent defining the grant conformably to

the intendment of the act." Hence, in 1921, when appellant made his filing and in 1925 when he received his patent, the title to this 5.38 acres had long since passed from the government, and the conveyance thereof to him was wholly ineffectual. The language of the Supreme Court of the United States in *Northern Pacific Ry. Co.* v. *Townsend,* 190 U. S. 267, 47 L. Ed. 1044, 23 Sup. Ct. Rep. 671 (see, also, Rose's U. S. Notes), discussing this proposition, follows:

"At the outset, we premise that, as the grant of the right of way, the filing of the map of definite location, and the construction of the railroad within the quarter section in question preceded the filing of the homestead entries on such section, the land forming the right of way therein was taken out of the category of public lands subject to pre-emption and sale, and the Land Department was therefore without authority to convey rights therein. It follows that the homesteaders acquired no interest in the land within the right of way because of the fact that the grant to them was of the full legal subdivisions."

The judgment of the lower court is affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.