[Civil No. 3020. Filed November 4, 1931.]

[4 Pac. (2d) 670.]

F. E. BOYD and HELEN E. BOYD, Appellants, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, a Corporation, Appellee.

Messrs. Smith & Faulkner, for Appellants.

Messrs. Chalmers, Fennemore & Nairn, Mr. Louis L. Wallace and Mr. Carl D. Hammond, for Appellee.

LOCKWOOD, J. — Hellen Huntley, hereinafter called decedent, on October 10, 1910, made a homestead entry on the northeast half of the northeast quarter of section 28, township 21 north, range 17 west, G. & S. R. B. & M. Long prior to this time, and when they were unoccupied government lands, the predecessors in interest of the Atchison, Topeka & Santa Fe Railway Company, a corporation, hereinafter called appellee, had constructed what is known as its first, or west-bound main line of railroad across said premises, and thereby, under the provisions of the act of Congress of July 27, 1866 (14 Stat. 292, 294), acquired a right of way one hundred feet wide on each side of the center of· such track.

During the early part of 1922 the agents and employees of appellee entered upon said premises and commenced the construction of what is known as ap-

pellee's east bound, or second main line track, which practically parallels its first, or west-bound track, but in many places is not on the right of way granted by the act of Congress aforementioned. The east-bound track was completed during the early part of 1923. Decedent made final proof on her homestead above, and final certificate was issued to her November 10, 1922, patent following in due course on March 19, 1923. She died some time thereafter, and her estate was duly administered. On January 3, 1927, an administrator's deed was issued, conveying the property in question to one C. W. Clinton, who in turn conveyed his interest therein to F. E. Boyd and wife, hereinafter called appellants.

In October, 1929, appellants filed their complaint in this cause under the provisions of article 8, chapter 93, Revised Code of 1928 (sections 4356–4358), seeking to quiet title to the entire homestead entry above described against appellee, and also filed another action to recover rent for the use of the portion of the premises occupied by the railroad for its east-bound track as aforesaid. Appellee answered, setting up the building of the east-bound track as aforesaid, and "that said Hellen Huntley, in her lifetime, made no protest or claim whatsoever to or against defendant with respect to the said lands and premises so taken by defendant, and fully acquiesced in the use of same by defendant for its right of way, and railroad purposes, and made no protest whatsoever or any claim or demand against defendant"; and further filed a cross-complaint asking that its title in and to that portion of the premises occupied by both its east-bound and west-bound tracks be quieted.

Various motions and demurrers to both the complaint and the cross-complaint were duly filed and passed on by the court, and the matter went to trial

before a jury, which, in reply to two special interrogatories, found that the east-bound track in question was constructed during Hellen Huntley's lifetime, and with her knowledge, and that appellants purchased the land in question from her estate knowing that the appellee was in possession of and maintaining its track across said land, and thereupon the jury returned a general verdict in favor of appellee. The court rendered judgment on the verdict, denying appellants' claim, and quieting the title of appellee to that portion of the ground covered by the right of way of both west and east bound tracks as described in the cross-complaint. In the motion for new trial appellants contended that they were at least entitled to have their title quieted to that portion of the homestead not covered by the respective rights of way, and the court ordered that a new trial would be granted unless appellee filed a disclaimer to all such premises except the two rights of way, which disclaimer was duly filed, whereupon the motion for new trial was denied, and appellants have brought the case before us for review.

There are some thirty-one separate and distinct assignments of error, but we prefer to consider the case rather on the legal propositions involved under the foregoing statement of facts than to discuss these assignments separately. It is admitted by both parties that appellee was the owner in fee simple of the right of way for its west-bound track, granted under the act of Congress aforesaid, so its title to that portion of the land may be eliminated from our discussion of the issues.

The first question we consider is what, if any, right did appellee acquire by entering upon the premises and constructing and operating its east-bound track thereon? This question has frequently been before the courts, and appellants admit that the case of

*Roberts* v. *Northern Pacific R. R. Co.,* 158 U. S. 1, 39 L. Ed. 873, 15 Sup. Ct. Rep. 756, is in point. Therein the court said: "So, too, it has been frequently held that if a landowner, knowing that a railroad company has entered upon his land, and is engaged in constructing its road without having complied with the statute, requiring either payment by agreement or proceedings to condemn, remains inactive, and permits them to go on and expend large sums in the work, he will be estopped from maintaining either trespass or ejectment for the entry, and will be regarded as having acquiesced therein, and be restricted to a suit for damages. *Lexington & O. R. Co.* v. *Ormsby,* 7 Dana (Ky.) 277; *Harlow* v. *Marquette, H. & O. R. Co.,* 41 Mich. 336, 2 N. W. 48; *Cairo & F. R. Co.* v. *Turner,* 31 Ark. 494, 25 Am. Rep. 564; *Pettibone* v. *La Crosse & M. R. Co.,* 14 Wis. 443; *Chicago & A. R. Co.* v. *Goodwin,* 111 Ill. 282, 53 Am. Rep. 622." And we have in the case of *Donohoe* v. *El Paso & S. W. R. Co.,* 11 Ariz. 293, 94 Pac. 1091, expressly approved of such holding.

Nor do appellants deny that under the findings of the jury and the facts in this case they are estopped from maintaining either trespass or ejectment. Their contention is that they are not, however, barred from maintaining an action for use and occupation of the premises. We think that under the opinion of the court in the Roberts case they are as much barred from such an action as they are from the one for damages. In that case the court said: "It is well settled that where a railroad company, having the power of eminent domain, has entered into actual possession of land necessary for its corporate purposes, whether with or without the consent of the owner of such lands, *a subsequent vendee of the latter takes the land subject to the burthen of the railroad;* and the right to payment from the railroad company

if it entered by virtue of an agreement to pay, or to damages if the entry was unauthorized, belongs to the owner at the time the railroad company took possession. . . . '' (Italics ours.) And the conclusion established by the decisions is there said to be that the damages belong to the owner at the time of the taking and *do not pass to a grantee of the land under a deed made subsequent to that time, unless expressly conveyed therein.*

Since the right of damages is personal to the owner, and does not pass with a deed, to allow a purchaser to collect rent would be to allow two recoveries for the same act. Further, as is said in the Roberts case, since the subsequent vendee of the owner takes the land subject to the burden of the railroad, he is presumed to know the entire situation, and can claim no compensation of any nature from the railroad for damages to something he did not purchase, to wit, an unencumbered property.

It is urged, however, that even though the railroad cannot be ejected from the premises, and is not liable in any manner to appellants for its occupancy thereof, its right thereon is merely that of an easement, and not of a title in fee, and that appellants therefore are at least entitled to have their reversionary interest determined and the title thereto quieted. It is well settled that an easement may be protected by a suit to quiet title under a statute as broad as ours. *Parker* v. *Swett,* 40 Cal. App. 68, 180 Pac. 351; *Humphrey* v. *Krutz,* 77 Wash. 152, 137 Pac. 806; *Mannix* v. *Powell County,* 60 Mont. 510, 199 Pac. 914. And we think in reason a reversionary interest may be protected against an easement in the same manner, especially when, as in this case, appellee is claiming a title in fee. Let us then consider the nature of the interest, if any, of the respective parties to the premises in dispute.

Had appellee been in adverse possession of the premises for ten years, it could doubtless have claimed complete title thereto under sections 2051 and 2054, Revised Code of 1928. Its adverse possession does not at most extend over a period of seven years, however, and we are of the opinion that the ten-year statute of limitations set forth in section 2051, *supra,* is the only one applicable under the circumstances. Appellee in effect concedes this, and relies rather on title by estoppel. What is the nature of the right acquired thereby?

The only logical theory upon which the right of the original owner to recover possession of the land entered upon by a railroad is denied is that, since the railroad has in all events the right to secure possession by eminent domain of the property for its right of way, regardless of the owner's consent, he is fully compensated by his action for damages. Such being the case, we are of the opinion that in reason the title acquired in such a manner is similar to that which would have been acquired by proceedings in eminent domain. Had the railroad company proceeded in that manner to acquire its right of way, it would have acquired merely an easement, and not a fee-simple title to the property.

Paragraph 3076, Revised Statutes of Arizona of 1913 (Civil Code), which was in force at the time the east-bound track was constructed, reads as follows:

"The following is a classification of the interests, estates and rights in lands subject to be taken for public use:

"(1.) A fee simple, when taken for public buildings or grounds or for permanent buildings, for use in connection with a right-of-way, or for an outlet for the flow or a place for the deposit of tailings from a mine or for irrigating ditches.

"(2.) An easement, when taken for any other use."

Section 1763, Revised Statutes of 1887, Civil Code, is in exactly the same language, and the. Supreme Court of this state in 1888, in the case of *Atlantic & Pacific R. Co.* v. *Lesueur,* 2 Ariz. 428, 1 L. R. A. 244, 19 Pac. 157, said as follows:

"It is further urged with great force, skill and ability that the grant of right of way to a railway is *sui generis,* and is in fact a grant of the fee; and, if so, to exempt the fee so granted exempts the superstructure. It is said that the term 'right of way' is used to describe the land granted,—that is, that these are words of description, rather than of tenure. We cannot concur with this view, and no authority can be found which so holds. We must conclude that the words are used in their common, well-known, and universally accepted legal meaning, and that it was a grant of an easement as defined by the law. It was not a grant of the fee. *Should the company see fit to change its line and abandon its present alignment at any point, the right of way so abandoned would revert to the grantor.''* (Italics ours.)

It is urged that this court has reversed the Lesueur case in the case of *Chambers* v. *Atchison, T. & S. F. R. Co.,* 32 Ariz. 102, 255 Pac. 1092. The precise point passed on in the Lesueur case, to wit, whether the title acquired by the railroad company to its right of way was in fee simple or merely an easement, was not presented to, nor considered by, this court in the Chambers case, and the word "title" therein was used by the court simply to indicate the interest of the railroad company without expressing an opinion as to what that interest amounted to in the eyes of the law. The ruling in the Lesueur case, above set forth, was, and still is, the law of Arizona. For this reason we think appellants were entitled to have their reversionary interest in the premises in controversy quieted, regardless of the fact that it is extremely doubtful as to when, if ever, such interest

will fall in, and we think appellee was equally entitled to have its easement quieted.

Appellants raise a question as to the extent of the right of way acquired by appellee. Paragraph 2151, subdivision 4, Revised Statutes of Arizona of 1913 (Civil Code), reads as follows:

"2151. Such corporations [referring to railroad corporations] shall have power: . . .

"(4.) To lay out their said railroads or either thereof, not exceeding two hundred feet wide, and to construct and maintain the same with single or double track, with such appendages as its directors may deem necessary for the convenient use thereof. . . . "

Had appellee proceeded under eminent domain to acquire the right of way in question, it would presumably have been the usual width, one hundred feet on each side of the center line of the track, and we think, since as we have indicated, the proceedings are analogous to eminent domain, it will be presumed the right of way acquired by the railroad company was of that width.

It is not necessary, in view of the facts, that the parties be put to the expense of a new trial. The judgment of the trial court as rendered is reversed and the case remanded, with instructions to enter judgment quieting appellants' title in fee to all of the homestead entry of decedent not embraced in either the east or west bound right of way, together with a reversionary interest to the land embraced in the east-bound right of way, and quieting appellee's title in fee to the land in the west-bound right of way acquired under the act of Congress, and to an easement in the land covered by the east-bound right of way.

McALISTER, C. J., and ROSS, J., concur.