ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. J. R. BLACKSHIRE.

1. PRACTICE; *Examination, and Cross-Examination; Bias of Witness.* Upon cross-examination a question is proper which enables the jury to see upon what basis the witness has made his estimates of value, or which connects his general estimates of value and damages with the particular premises and injury. So also a question which seeks to ascertain if there be anything of a personal nature which may bias or influence the testimony of the witness.

2. PRIVATE STATUTES, *Must be Pleaded.* Courts do not take judicial notice of a private act of the legislature. It must be proved or pleaded, or no attention will be paid to its existence.

3. CONDEMNATION PROCEEDINGS FOR RAILROAD PURPOSES; *Damages to Land-owner.* In a proceeding to recover damages for the right of way appropriated to the use of a railroad company it is not error to refuse to instruct the jury "that damages to adjoining lands to right of way may be offset by benefits to same lands," when the court has already charged that "the fair way of determining the injury is to determine the fair

market value of the premises before the right of way is set apart, and then again after, and the difference will be the true measure of damages."

4. ———— *Purpose of Taking.* There is no error in refusing an instruction "that the purposes for which the right of way was taken is not to be considered, only the taking."

5. ———— *Compensation for Injury.* A charge that the railway company "does not agree to increase the plaintiff's land in value, but does agree to compensate for any injury or depreciation," refers to any injury caused by the appropriation of the right of way, and it is not reasonable to suppose a jury was misled thereby.

6. VERDICTS; *Conflicting Evidence.* It is well settled that this court will not reverse a judgment of the district court on the ground that the verdict is contrary to the evidence, when there appears in the record some unimpeached testimony sustaining every point in issue.

### *Error from Chase District Court.*

BLACKSHIRE appealed from the decision and award of the board of county commissioners of Chase county, as to the appraisement of value and assessment of damages for lands taken for the right of way of *A. T. & Santa Fe Railroad Company's* railroad through and across certain lots of land belonging to him, under the provisions of art. 9, ch. 23, Gen. Stat. 1868. The amount assessed by the said county commissioners in favor of *Blackshire,* on account of such taking, and for injury to his adjoining lands, was $577.52. *Blackshire* owned five quarter-sections of land, embracing 800 acres. Three of the quarter-sections were cut, or partially cut, by the said right of way, two of them diagonally, and nearly in the center, and the third having only about an acre of ground cut off from one corner. The only questions of fact presented by the issues made by the pleadings were as to the *amount* which *Blackshire* was entitled to receive from the railroad company by reason of the premises. The appeal was tried at the April Term 1872 of the district court, and a verdict found in favor of *Blackshire* for $2,400. New trial refused, and judgment on the verdict; and the *Railway Company* brings the case here for review. [The questions and answers referred to by counsel are copied in full in the opinion.]

*Jacob Safford,* for plaintiff in error:

1. The court erred in allowing certain questions to be propounded to H. L. Hunt, a witness for defendant below, upon his cross-examination. The questions were no part of a proper cross-examination. No inquiry had been made of the witness during the giving in of his evidence in chief, which could in any view of the case be held to furnish the least ground for such questions. They were each and all entirely irrelevant and foreign to the issues to be tried, and were calculated to induce a prejudice in the minds of the jury against the defendant and its road. Take, for example, the first question and the answer thereto: the decision to be arrived at, was *not* as to whether the *witness* would rather have a farm with or without a railroad across it, nor could *his* preferences have anything to do with the real question at issue. Neither was there any question at issue between the parties, as to what the value of Blackshire's land would be, with all the benefits of a railroad in the vicinity, and yet not touching his lands. We insist that the mere allowance of such inquiry under the circumstances, and in view of the answer which might have been expected, and which was given, could scarcely have any other than an unjust and prejudicial effect as against the defendant. In cases of this kind, as indeed in any other, it is enough, and justice to litigants demands, that only *legal* testimony shall go to juries.

2. The court erred in refusing to instruct the jury, "That under the charter of the A. T. & S. F. Rld. Co., approved Feb. 11th, 1859, the jury must take into consideration the advantages as well as any injury to the plaintiff's land; that this is not affected by § 4, art. 12 of the constitution of the state." As to this point, we have only to refer to § 11 of the charter of the company, passed, and acted upon by the company, long before the adoption of the section of the constitution referred to. Private Laws of 1859, p. 57.

3. The court erred in refusing to instruct the jury, "That damages to adjoining lands to right of way, may be offset by

benefits to same lands." Testimony was offered, and without objection, under which such an instruction was applicable, and it should have been given. But, says the defendant in error, this rule is in conflict with the constitution, (art. 12, § 4,) and hence is not good law. We say there is no such conflict. The section referred to only requires that *compensation* shall be made for the *right of way*. It says nothing about *damages* to adjoining lands, or otherwise. And besides, the words "compensation" and "damages" are by no means convertible terms. They do not mean the same thing, nor are they used as synonymous anywhere in the constitution or laws of the state, but a wide distinction is preserved throughout. See § 4, art. 12, referred to; also §§ 47 and 82, ch. 23, Gen. Stat.; also, Pierce on Rly. Law, 196. But what is "compensation," as used in our laws? We answer, the *price* or *value* of the land *taken:* (§ 82, ch. 23, *supra*.) Then, as to "damages," what are they? and how are they to be determined? We answer, The *amount* of the depreciation of the land, caused by the railroad—expressed in dollars and cents—is the damages, and this amount is to be arrived at by a consideration of the circumstances which *immediately depreciate such land*, by the taking of the right of way, and no other circumstances can be considered. See Pierce on Rly. Law, 196, 197, 204. But lands crossed by a railroad may be benefited as well as damaged. If then, such lands, while being depreciated in some respects, and to a certain amount, are benefited in other respects, and to a like amount, what room, we ask, is there for saying that there is any real damage, for which a recovery can be had? It certainly seems to us that at the best such damage can, in such a case, be but nominal.

4. The court erred in refusing to instruct the jury, "That the *purposes* for which the right of way was taken is not to be considered, *only the taking*." This is the settled law of such cases. Pierce, 191; 16 Barb., 273; 6 How. Pr. R., 467. Such refusal operated prejudicially to the defendant. It was the same as saying to the jury: "You may consider the use to which the land is to be, or has been put. It is for a rail-

road, and such use is far more damaging to the land and to the owner than such a taking for other purposes could be." Suppose, for instance, that this taking had been for an ordinary, or for a plank or macadamized road — the amount of land taken being the same — the severance of one portion of plaintiff's land from the other just as effectual, etc.: does any one imagine for a moment that damages anywhere near the amount found here would have been assessed? And yet, under the rule of law referred to the amount in each case ought to be the same, or substantially so.

5. The damages are grossly excessive. For at least $700 to $800 of the verdict there is no warrant or support in the testimony of the plaintiff even. It is the law, and the court instructed the jury that they should not consider any damage done to the lands of the plaintiff below, which were not touched by the railroad, and the proof shows that portions only of three quarter-sections were at all so touched. Through two of the quarter-sections the road passes, dividing them nearly into two equal parts, but the third quarter is only touched at one corner — about one acre of land being cut off from it. The depreciation of the land was placed by plaintiff's witnesses at $5 per acre, from all causes — no distinction being made as to amount of injury to any one acre or number of acres being different or greater to that done to any other acre or number of acres. The number of acres in the three quarters any part of which were so touched, as above stated, by the railroad, equals 480 acres. The $5 per acre depreciation, so far as it resulted from the railroad, was not and could not be applicable to all the 480 acres. At least forty acres of the first quarter-section touched by the railroad was north of a regularly laid out and traveled common road, and by such road was separated and cut off from the remaining portion of the quarter-section, thus becoming a separate and distinct tract or lot of land. This portion of the quarter, so cut off by the said common road, was, and is not touched by the railroad at all, and hence could not be deleteriously affected by it. It was already *separated permanently* from

the portion of the same quarter through which the railroad ran, and what more could be affected by the railroad? This forty acres then should have been left out of the computation; and yet $200 of the verdict was for this forty acres. This showing alone ought to and will warrant a reversal of the judgment. But if the two quarter-sections touched by the railroad and divided into two nearly equal parts by it are depreciated in each acre $5, and only that amount, how can it be said that the quarter through the corner of which only the railroad passes, is damaged or depreciated in the same amount? The idea is simply preposterous, and the allowance monstrous. The whole 160 acres of this quarter depreciated in the sum of $800, because the railroad cuts off *one acre* from one corner!

But suppose we take this quarter by its legal subdivisions, and notice how they are affected by the railroad, as may be done under art. 9, ch. 23, Gen. Stat. It will be seen that only one forty acres of it comes anywhere near the railroad, or can be affected by it! One hundred and twenty acres of this quarter ought then to be left out of the account in this estimate of damages, and this number multiplied by $5 gives $600 more of the verdict for which there is no warrant or support in the testimony, when considered in the light of reason and common sense, and the law applicable thereto.

6. But how is the case, when considered in the light of the testimony of *more than one-half* of the witnesses sworn on the trial, to the effect that the plaintiff's land was either not damaged or depreciated at all by the railroad, or in a very slight degree? And again, how does this verdict look in the light of the testimony of several witnesses who testified that plaintiff's land was not only *not* depreciated by the railroad, but was enhanced in value by its location? It seems to us to be plain, at least, that it was not *damaged*, and hence that the verdict for $2,400 is not sustained by sufficient, or by any, evidence. Verdicts clearly and manifestly against the weight of evidence should be set aside. 7 Mass., 261; 13 id., 507; 4 Conn., 102; 12 id., 487; J. J. Marshall, 440; 3 Blackf., 304.

*Ruggles & Plumb*, for defendant in error:

1. The first question objected to was competent for the purpose of explaining or modifying the general conclusion as to value of land stated by witness in his examination in chief. It had direct and pertinent reference to the question of value about which the witness had testified in chief. It indicated the true basis of assessment of damage, which allows to the party whose land is taken, the benefit of the general rise in value of land growing out of the building of the road, the same as adjoining lands, not touched by the road, (6th Wis., 636.) The question was also responsive to the statement of the witness in chief that " people owning land asked more for and from the building of the road. At time of the appraisement, I think the lands in the vicinity of plaintiff's were worth," etc. The admission of the question was within the discretionary power of the court. 1 Greenl. Ev., § 449. There are no positive and fixed limits to a cross-examination. The witness was one of the board of commissioners who had made the assessment of damages that was appealed from, and which was the subject of the action. He had been in the pay of the railroad company, and naturally he would feel like justifying his expression of judgment made as such commissioner — he had been chosen for the assessment of damages (in connection with the other members of the board) by the railroad company: § 81, page 212, Gen. Stat.

The question, taken in connection with the two following, tended to disclose the interest or bias of the witness, by showing that he had land through which the railroad ran, which he was trying to sell. The second and third questions were asked for the sole purpose of showing interest or bias, and as such were competent. Being answered in the negative they did not affect the case unfavorably to plaintiff in error.

2. There was no error in the refusal of the court to instruct the jury that they "must take into consideration the advantages as well as any injury to the plaintiff's land." The condemnation in this case was under the laws of 1868, ch. 23,

as shown by the fact that the original assessment was made by the county commissioners. The court could not take judicial notice of a private charter such as is described in the instruction asked. (A. & A. on Corp., § 632.) The charter referred to was neither pleaded nor proven. While by the pleadings it was admitted that the plaintiff in error was a railway corporation, yet this 'was not an admission of any special fact applicable to plaintiff in error alone, such as is assumed in the instruction asked. The territorial legislature did not possess the right of eminent domain — so the provision of the charter cited never was operative. (Cooley's Const. Lim., 525.) This provision of the charter was abrogated by the adoption of the constitution which only saved such portions as were not in conflict with its provisions: Ordinance, § 4.

3. As to the refusal of the court to instruct the jury "that damages to adjoining lands to right of way, may be offset by benefit to same lands," we need only cite art. 12, § 4, of the constitution. This is *verbatim*, § 5 of art. 13 of the constitution of Ohio, save a clause directing the method of ascertaining the compensation. That provision of the Ohio constitution has been construed by the supreme court of that state adverse to the position of the plaintiff in error. (4 Ohio St., 330; 5 id., 575; 6 id., 186.) All these decisions were rendered before the adoption of our constitution, and in the adoption of this provision from the Ohio constitution we adopted with it the construction put upon that provision by the Ohio court. 1 Kas., 227; 4 Kas., 353.

"Compensation" and "damages" as used respectively in the constitution and statute, are precisely synonymous. (2 Iowa, 288.) The provision of the Iowa constitution is: "Private property shall not be taken for public use without just compensation." Art. 2, §18. The narrow construction sought to be applied to the equivalent provision of our constitution by the plaintiff in error, would, applied to the Iowa constitution, limit compensation to the property actually "taken," — viz., right-of-way. But the supreme court of Iowa in the case above cited, repudiate such a construction; and say that ·

"just compensation" means "damages." 24 Mo., 544; 4 Chand., (Wis.,) 83. So far as such an instruction could in any sense be proper, it is embodied in the instruction given by the court. This court has already decided this point squarely against the position of plaintiff in error: 8 Kas., 409, 419; 9 Kas., 137.

4. The court properly refused to instruct the jury "that the purposes for which the right-of-way was taken is not to be considered, only the *taking*." This instruction does not embody the law applicable to this case. Pierce's Rld. Law, 184 to 198.

5. The verdict is sustained by the plain, unequivocal, positive testimony of eight out of the sixteen witnesses testifying on the subject. The jury adopted substantially the testimony of these eight witnesses in making up their verdict, and the court below refused to interfere. This court has so repeatedly decided, that under such circumstances it will not interfere, that we do not deem it necessary to argue the point.

Verdicts in cases where the damages are the subject of, and required to be established by proof, are to be distinguished from those—as in slander—where the jury take cognizance of the damage without any proof whatever. In these latter cases the reviewing court is as competent as a jury to determine the proper measure of damages. But in the former, the credit and judgment of witnesses are embodied in the verdict, and these cannot be considered by this court.

The opinion of the court was delivered by

BREWER, J.: The plaintiff in error commenced proceedings to condemn the right of way through the land of the defendant in error. Not satisfied with the amount awarded him by the commissioners, Blackshire appealed to the district court. There he recovered a judgment of $2,400, to reverse which this proceeding in error is brought. Several questions are raised by counsel for plaintiff in error, on the record, and discussed with great ingenuity and ability. We will examine them in the order in which they are presented in his brief.

And first, "the court erred in allowing certain questions to be propounded to H. L. Hunt, a witness for defendant below,

**1. Examination and cross-examination. Practice; bias of witness.** upon his cross-examination." The only question in issue under the pleadings was the amount of damage. Hunt had been one of the commissioners who made the award from which Blackshire appealed, and was called by defendant to testify as to the value of the land taken, and the amount of damage done to the remainder of Blackshire's farm. After testifying at some length for defendant he was asked on cross-examination among others these three questions:

*Question.*–Take plaintiff's land just as it is, and suppose the railroad ran through the valley without running through his land: what is the difference in value, compared with the value as the road now is? *Answer.*–I would rather have the land without the road running through it, but don't know what the effect on the general market would be.

*Question.*–Have you not a piece of land in the neighborhood of plaintiff which you are offering to sell, and desirous to sell, through which the railroad runs? *Ans.*–Yes, I have.

*Question.*–State whether or not these facts might not bias your judgment as to value of Mr. Blackshire's land? *Ans.*– I think not.

As no ground of objection was stated, it may well be doubted whether anything was saved by the exception which we can consider. But waiving this, it seems to us there was no error in permitting this latitude upon cross-examination. It is a matter of common knowledge that the building of a railroad tends to increase the value of lands in its vicinity. It is also a matter equally of common knowledge that it is an injury to any particular farm which it crosses. The witness had testified on his direct examination that "people owning land asked more for and from the building of the road." It was proper to seek a modification of this general statement, in reference to this particular farm, and it could well be done by the contrast presented in the first of these questions. It drew his attention as well as that of the jury to known facts of great importance in determining the amount of damages

sustained. On cross-examination great latitude is tolerated, and anything is proper which enables the jury to see upon what basis the witness has made his estimates of value, what facts have induced him to form the opinion he has expressed, or which connects his general estimate of values and damages with the particular premises claimed to have been injured. The other two questions were proper to ascertain if there existed anything of a personal nature to bias or influence the judgment of the witness. That the answers were unfavorable to the party asking the questions does not render the questions improper.

II. "The court erred in refusing to instruct the jury, 'That under the charter of the A. T. & S. F. Rld. Co., approved Feb. 11th 1859, the jury must take into consideration the advantages as well as any injury to the plaintiff's

*2. Private acts— to be pleaded.*

land; that this is not affected by § 4, art. 12, of the constitution of the state.'" It is sufficient reply to this objection to say that the act incorporating the A. T. & S. F. Rld. Co. is a private act, and as it was neither pleaded nor proved the court was under no obligation to notice its existence, or refer to its provisions. Courts take judicial notice of the public statutes of their own state, and these need to be neither pleaded nor proved. But the rule is otherwise with the private laws. They are matters of proof. In pleading them, or a right derived from them, it is sufficient under the code to refer to them by their title and the dates of their approval, and thereupon the courts take judicial notice of them: Code, §124. Nothing of this kind was done in this case.

III. "The court erred in refusing to instruct the jury, 'That damages to adjoining lands to right of way, may be offset by benefits to same lands.'" The instruction

*3. Damages to land-owner.*

which the court did give was as follows: "The fair way of determining the injury is to determine the fair market value of the premises before the right of way is set apart, and then again after, and the difference will be the true measure of damages." If counsel meant to claim by the

instruction asked, any different rule than that embraced in the one given, if he meant by that, that the jury were to consider any prospective benefits, any advantages which might in the future accrue to the land-owner by the construction of the road, his instruction was erroneous. If it enunciates the same rule, giving it once was sufficient, and it was no error to refuse a repetition.

IV. "The court erred in refusing to instruct the jury, 'That the *purposes* for which the right of way was taken, is not to be considered; only the taking.'" This in effect says that all that the jury may rightfully consider is, that so much land in such a shape and in such a location has been conveyed away from the owner to another party. This is not the law. There are many things besides which must be taken into account before any fair award of damages can be made. Not to venture into debatable ground, nor to inquire what may and may not be considered, we will mention one about which there can be no controversy. Where a farm is cut in two by a roadway the amount of damages is materially affected by the presence or absence of a high embankment, or a deep cut; and the necessity for these can only be determined by the purpose for which the right of way is taken. The use to which the right of way is appropriated must affect the question of damages. It is not necessary to affirm that every conceivable annoyance and inconvenience resulting from proximity to and intersection by a railroad is proper subject of inquiry and damage. It is enough now to decide that the jury may consider something more than the loss of such a strip of land. *M. K. & T. Rly. Co. v. Haines*, ante, 439.

*4. Purposes of taking.*

V. The next objection raised by counsel is an exception to certain phrases in the charge of the court. That portion of the charge which includes these phrases is as follows:

"You are not to consider the land as an entire tract, but merely as the commissioners themselves looked upon it as they went upon the several tracts and determined the amount they were injured. The railroad company does not agree to

increase the plaintiff's land in value, *but does agree to compensate for any injury or depreciation,* and they (the commissioners) take the value as it was the moment before the right of way was appropriated, and then how much it is depreciated or injured, upon the same market. *In determining this you have the right to look at all matters that injure or deteriorate the value of the premises in market.* In doing this you can, of course, look at the manner in which the road runs through the several tracts or quarter-sections. How does it divide the tracts into regular or irregular, salable or unsalable portions? and how the aggregate of these pieces compared with the appraised value of the whole tract? You are not to allow consequential or speculative damages to the plaintiff, as the necessity to build fences that may never be required, or for any other purpose not certain. The damages that you can consider are actual damages, not imaginary; such as affect the value of the premises in the market, and such as are established by proof," etc.

The objection is to the clauses italicised. Of course the company does not agree to compensate for every injury, but only for such as result from the appropriation of the right of way for its road. Nor is there any possibility of a jury's being misled by such a general statement. They must of necessity consider it as limited to those injuries which the road causes. None other could be meant. No juror, unless inconceivably stupid, could suppose any other were meant.

The last objection, and one to which our attention is most strenuously directed, and upon which counsel has placed great 6. Verdicts; conflicting evidence, etc. labor, is, that the damages awarded are excessive, and not supported by the testimony. We have examined the testimony with great care, and are constrained to say that it brings the case within the rule which forbids interference by this court. It would be a useless labor to attempt to transfer the testimony to this opinion, or notice its salient points. It is enough that more than one witness placed the damages at a sum largely in excess of the verdict. And this is a case where the verdict must be based upon the estimates of value given by witnesses, and not like the case of physical injuries where the jury make the estimate from the

32—10 KAS.

circumstances of the case. It is therefore simply a question whether the verdict is contrary to the evidence. The plaintiff himself testified in these words: "The market value of the land, that is, the whole 800 acres, was $20 per acre before the railroad was located· on it. The value of that left was not over $15 per acre after the road was built." A. R. Ice, John Holmes, Wm. H. Shaft, and J. D. Riggs, gave similar testimony. Indeed, one of them, Holmes, fixed the damage at $6 per acre. Counsel insists that as two of the quarter-sections were not touched by the road, they could not in law or in fact be damaged, and that this testimony must be limited in its application to the other three. It is enough to say that the witnesses did not so limit it. The farm of 800 acres was in one body, an entire tract, and they said that the whole farm was damaged five dollars an acre. If they meant only 480 acres, that should have been shown on cross-examination. We do not understand that when a witness testifies that a farm is damaged five dollars an acre, he means that each particular acre standing by itself, is damaged to that extent, but that the farm as a whole is injured so much as will, if distributed, average five dollars an acre. It may be that the award of the jury is high; it seems probable that it is. But it does not appear from the testimony to be so grossly excessive that it may properly be disturbed. These are all the questions presented in the record and therefore the judgment must be affirmed.

All the Justices concurring.