No. 37,843

In re the Estate of Ella Demoret, Deceased. (GENE STEVENS and JOSEPH CLAIR STEVENS, as Executors, under the Last Will and Testament of Ella Demoret, Deceased, *Appellees*, v. FAYE COLLINGWOOD, Guardian of the Persons and Estates of Diantha Musette Collingwood and Sarah Ellen Collingwood, Minors, *Appellant.*)

(218 P. 2d 225)

Opinion filed May 6, 1950.

*Walter F. Jones* and *Harry H. Dunn,* both of Hutchinson, argued the cause, and *J. Richards Hunter,* of Hutchinson, was with them on the briefs for the appellant.

*H. R. Branine,* of Hutchinson, argued the cause, and *C. E. Chalfant* and *F. C. Littooy,* both of Hutchinson, and *James A. McClure, Robert L. Webb* and *Ralph W. Oman,* all of Topeka, were with him on the briefs for the appellees.

*W. L. Cunningham, D. Arthur Walker, Wm. E. Cunningham* and *W. R. Howard,* all of Arkansas City, as *amici curiae.*

The opinion of the court was delivered by

PARKER, J.: This appeal is from an order made by the district court in a probate proceeding. Jurisdiction of the district court to make the order is also involved.

Ella Demoret died testate on or about the 11th day of December, 1946, a resident of Reno county, leaving a large amount of real and personal property, the title to which, at least so far as the public records were concerned, stood in her name.

By the terms of her will her executors were authorized and directed to divide her real estate into ten shares or parcels on the basis of value. Each of nine of these parcels was to equal 11 percent and the tenth 1 percent of her real property. When so divided, the executors were directed to convey the parcels as follows: The 1 percent parcel to her grandnephews, Gene Stevens and Joseph Clair Stevens, share and share alike; one 11 percent parcel to C. D. Updegraff, her nephew, and Elizabeth, his wife, or the survivor of them, during their lives, and upon their death to vest in the persons next hereinafter mentioned, share and share alike; one 11 percent parcel to each of eight other nieces and nephews namely, Maud Seyb, Myrtle Young, Molly Seyb, Grace Graber, A. D. Updegraff, James H. Collingwood, Lena Young and Ruby Richardson.

Substantially the same distribution was made of her personal property, the executors being authorized to sell it and divide the proceeds or make distribution in kind.

The will contained no description of the decedent's real or personal property and provided that the decision of her executors as to the division thereof should be final, conclusive and binding, upon her devisees and legatees.

It is not disputed that a substantial portion of the apparent estate left by the testatrix was acquired from the estate of her brother, D. F. Collingwood, hereinafter referred to as Dan, who died, a resident of Meade county, leaving a will under which she received one-half of all proprety owned by him on the date of his death.

Ella Demoret's will was admitted to probate in due course and Gene Stevens and Joseph Clair Stevens were appointed as executors in accordance with its terms. Notice of their appointment was first published on February 19, 1947. Thereafter all property standing in the name of such decedent, including that obtained by her under Dan's will, was inventoried as assets of her estate.

August 12, 1947, within nine months after publication of the first notice, Sigmund Siebert filed a claim against the estate of Ella Demoret. For present purposes it will suffice to say that in his petition, after detailing at length the conditions and circumstances leading up to its execution, he alleged the existence of a trust agreement between Ella and Dan, whereby the latter was to will her one-half of his property, with the understanding and promise she would take and hold it during her lifetime but before her death would execute a will whereby she would devise all of her property thus acquired in equal shares to Dan's nieces and nephews, except a nephew Mart Collingwood, or in the event of the death of any one of such relatives prior to her death then she would devise the share of such deceased nieces or nephews to their respective blood heirs. He then charged that Ella failed to leave a will as she had agreed to do and that she died holding such property in trust for Dan's living nieces and nephews, Alfred J. Collingwood, A. D. Updegraff, C. D. Updegraff, James H. Collingwood, Ruby Richardson, Lena Young, Maud Seyb, Molly Seyb, Myrtle Young, Grace Graber, his grandnieces, Diantha Musette Collingwood and Sarah Ellen Collingwood, daughters of Lelo P. Collingwood, a deceased nephew, and the claimant himself, a grandnephew and son of Jessie Siebert, a deceased niece. He then asked that the probate court find Ella held the property acquired from Dan in trust during her lifetime for all his nieces and nephews, except Mart Collingwood, living at the time of her death, and the blood heirs, of any such nieces and nephews who might be dead,

living at the time of her brother's death; that such trust be imposed on all property real and personal received by Ella from Dan's estate, and that he be adjudged to be the owner of an undivided one-twelfth interest therein.

On August 12, 1947, pursuant to direction of the probate court, Siebert gave notice of a hearing on his petition to all devisees and legatees named in Ella's will and to all persons claimed by him to have an interest in Dan's property by reason of the trust agreement therein set forth, including Faye Collingwood, as guardian of Diantha Musette Collingwood and Sarah Ellen Collingwood, minors. Among other things his notice specifically stated that Ella had received Dan's property and held the same in trust during her lifetime for the nieces and nephews named in his petition, that he was asking that the trust be imposed on all such property and that on failure of any of the parties so notified to file written defenses to the petition on or before September 15, 1947, judgment would be rendered in accord with its terms.

The record does not disclose the reason for the delay but the fact is that nothing happened after service of his notice until February 10, 1948. On that date, which we pause to add was more than nine months from the publication of the executor's first notice to creditors, Faye Collingwood, as guardian of the minors heretofore mentioned, filed a petition in probate court, referred to therein as an answer and intervening petition to Siebert's petition. No useful purpose would be served by a detailed recital of the allegations of this pleading. It can be said, however, that under its averments the guardian made substantially the same claims as those made by Siebert in his petition and alleged that under and by virtue of the trust agreement Ella held all property received from Dan's estate in trust, that on the date of her death it belonged to the persons named in her petition (who were the same as those named in Siebert's petition), and that each of such persons, except her wards who owned a one-twelfth interest jointly, was the owner of an undivided one-twelfth interest therein.

So far as the record shows the executors gave no attention to the noticed hearing on Siebert's petition until April 1, 1948, at which time they filed an answer. On the same day they demurred to the pleading filed by Faye Collingwood, as guardian, on grounds that it failed to state facts to constitute a cause of action and that the pretended demand set forth therein was barred by the nonclaim stat-

ute (G. S. 1947 Supp. 59-2239). On the same date the executors filed an answer to the guardian's pleading, which for informative purposes can be said to state defenses similar to those made to Siebert's claim, alleging in substance that such pleading failed to state a cause of action; that the guardian's claim for relief was barred by the nonclaim statute; that the trust agreement relied on was void, and that the property claimed by the guardian to be held in trust for the persons named in her petition was the sole and absolute property of Ella Demoret on the date of her death.

The parties are not entirely in accord as to what took place after issues were joined in the probate court as heretofore stated. We therefore turn to that tribunal's journal entry of judgment. It recites the parties agreed in open court that Siebert's claim and the intervening petition of the guardian should be heard and tried at the same time and on the same evidence; that the trial commenced on April 1 and ended the following day; that the executors' demurrer to the guardian's pleading was presented, argued, and a ruling withheld until the close of the evidence; that evidence was offered in support of the petition of each of the claimants; that the executors then separately demurred to the evidence adduced in support of each of the claims; that both demurrers were overruled; that the executors rested without introduction of any evidence; that the claims of the respective claimants were then submitted on the evidence adduced by them; and that the demurrer to the intervening petition of the guardian was also overruled.

Included also in the journal entry are extensive findings with respect to the facts on which the probate court based its judgment and decree holding that the agreement between Dan and Ella was entered into as claimed by Siebert and the guardian; that under and by virtue thereof Ella held the property received by her from Dan for the use and benefit of certain of Dan's nieces and nephews and grandnieces and grandnephews; that such agreement, as established and enforced, inured to the use and benefit of all such persons, and that the names of all persons for whom such property was held in trust and their respective interests therein were as follows: Sigmund M. Siebert, an undivided one-twelfth; Diantha Musette Collingwood and Sarah Ellen Collingwood, jointly, an undivided one-twelfth; Gene Stevens and Joseph Clair Stevens and Faye Whitson, jointly, an undivided one-twelfth; Alfred J. Collingwood; A. D. Updegraff; C. D. Updegraff; James H. Collingwood; Ruby Richardson;

Myrtle Young; Maud Seyb; Molly Seyb and Grace Graber, each an undivided one-twelfth.

Such journal entry also recites that the accounting necessary to determine the property received and held by Ella Demoret in trust should be and was specifically reserved for further hearing and determination in the probate court on some future date.

The notice of appeal in the instant case, asserted by the executors to have been served by them in perfecting their appeal to the district court from the judgment rendered in favor of the guardian, was filed in the probate court on April 28, 1948. The first paragraph thereof reads:

"To: Diantha Musette Collingwood, a minor, and Sarah Ellen Collingwood, a minor, and Faye Collingwood, Guardian of the persons and estates of Diantha Musette Collingwood, and Sarah Ellen Collingwood, minors; and Walter F. Jones, Guardian ad Litem for Diantha Musette Collingwood and Sarah Ellen Collingwood, Minors; and Jones, Hunter and Dunn, attorneys of record for Faye Collingwood, Guardian of persons and estates of Diantha Musette Collingwood and Sarah Ellen Collingwood, Minors; and to John R. Alden, Probate Judge pro tem of Reno County, Kansas (this notice being served upon said probate judge pro tem for the adverse parties to whom this notice is addressed);"

It will be noted that the last twenty words of the paragraph just quoted are emphasized by parentheses. On first blush this might appear to be unintentional. That this is not true is evidenced by the other notice of appeal filed by the executors in probate court on the same day in connection with what they term their appeal to district court from the judgment in favor of Siebert. The first paragraph of that notice contains identical language similarly emphasized, and reads:

"To: Sigmund M. Siebert and Jones, Hunter & Dunn and Cunningham, Walker & Cunningham, his attorneys of record; and to John R. Alden, Probate Judge pro tem, of Reno County, Kansas, (this notice being served upon said probate judge pro tem for the adverse parties to whom this notice is addressed):"

At this point it should perhaps be stated that although each notice of appeal contains the emphasized language heretofore quoted the proof of service filed by the executors states that a copy of each such notice was served on the probate judge pro tem for all persons named therein and for all persons entitled to take any interest or estate under the will. Likewise added that no personal service was had on anyone other than the persons to whom such notices are addressed.

In district court, the executors filed a special demurrer to the guardian's petition on the ground the pretended claim therein set forth was not filed within nine months after the date of the first published notice to creditors as required by the nonclaim section of the probate code (G. S. 1947 Supp. 59-2239). This demurrer was sustained by the district court. The guardian took action which entitles her to appellate review of that ruling.

Following perfection of her appeal the appellant filed a motion in this court challenging the jurisdiction of the district court to entertain the appeal from probate court on the ground notice of appeal was not served upon all the adverse parties in probate court and asking that we direct the district court to set aside its order sustaining the special demurrer and dismiss the executor's appeal.

Appellees contend the motion is entitled to no consideration because the question it presents was not raised in the court below and is not included in appellant's specification of errors. There is no merit to this contention. Jurisdictional questions when raised are subject to review at any time. Indeed even if the parties do not raise them it is the duty of an appellate court to do so. The rule is so well established that it requires no citation of the authorities supporting it.

If the district court had no jurisdiction of the probate appeal its ruling on the special demurrer is of no force and effect. Therefore the motion must be disposed of before any consideration is given to the merits of the appeal.

G. S. 1947 Supp. 59-2405 sets forth what is required in order to perfect a valid appeal from probate to district court and so far as here pertinent provides:

"To render the appeal effective: (1) The appellant shall serve upon the adverse party or his attorney of record, or upon the probate judge for the adverse party, a written notice of appeal specifying the order, judgment, decree, or decision appealed from, and file such notice of appeal in the probate court with proof of service thereof verified by his affidavit. . . ."

We need not labor long and extended arguments as to what the rule is in other jurisdictions. Neither is it important that on appeals from district court to this court that our code of civil procedure (G. S. 1935, 60-3306) only requires notice of appeal to be given parties who appear and take part in the trial. The section of the probate code from which we have just quoted expressly provides that on appeal from probate court to the district court notice

of appeal must be served on all adverse parties to make the appeal effective. Unless and until the legislature sees fit to provide otherwise we must adhere to its requirements.

Thus it becomes our duty to determine who were adverse parties in the probate court and then ascertain whether they were served with notice of the appeal to district court in conformity with the statute.

In giving consideration to the first question much confusion will be avoided by the early disposition of arguments advanced by appellees with respect thereto. Throughout their briefs and in oral argument they insist that Siebert's claim with respect to the property held in trust by Ella as well as those of the appellant, and for that matter those of others interested under its terms, must be regarded as separate and distinct demands against her estate and that hence, since appellant's petition was not filed within nine months from the date of the first published notice to creditors her claim was barred by the nonclaim statute (59-2239). It must be conceded our decisions are to the effect a demand against an estate must be exhibited within the period of time stated. Even so they do not go so far as to uphold the appellees' position. It clearly appears from the allegations of Siebert's petition he was asserting the existence of an agreement which, if proved, would result in a judgment to the effect that Ella merely held the naked legal title to the property acquired from Dan's estate in her name and that it was no part of her estate. The very essence of his proceeding was the establishment of a unitary trust, the terms of which were not special to him but common to all persons named in his pleading. To succeed himself he had to establish its existence as to them. Under such conditions we have little difficulty in concluding Siebert's proceeding must be regarded as commenced for the benefit of all persons having a common interest as beneficiaries under the trust.

Having concluded the nonclaim statute has no application under the factual situation here involved we can now determine who were adverse parties on appeal from the judgment rendered by the probate court. Right or wrong, a question which we need not here decide, it decreed that Ella held the property in trust for the parties named in Siebert's petition who owned it on the date of her death. The judgment was not divisible and should have been appealed from in its entirety. While there is much in the briefs, and we might add

in the notice of the appeal from probate court, to warrant a conclusion appellees limited their appeal solely to the portion of the judgment in favor of the guardian the notice does contain a saving clause which, without further comment, we shall treat as applicable to the entire judgment.

We are not disposed to prolong this opinion by attempting to distinguish the numerous decisions, cited by the parties, defining what is meant by the term "adverse parties." It suffices to say there can be no question but what the term as used in G. S. 1947 Supp. 59-2405, has reference to and includes parties who, after having been served with notice or summons in a proceeding or action, will be prejudiced by the result if the litigant appealing from the judgment rendered in such proceeding or action is successful in his appeal.

So far as the record discloses it clearly appears that Alfred J. Collingwood and C. D. Updegraff were adverse parties. Adverse, because unappealed from, the judgment in appellant's favor upheld the trust, found that it inured to their benefit and gave them greater rights than they would otherwise have if on appeal to district court a contrary judgment was rendered. To illustrate: Alfred J. Collingwood was not even recognized in the will. Under the judgment he was given an undivided 1/12 interest in the trust property. By terms of the will C. D. Updegraff received a life estate in Ella's real estate whereas the judgment gave him an absolute undivided 1/12 interest in the trust property. By the same token it could perhaps be held that all other parties awarded property under the judgment in accord with the terms of the trust were adverse. Of a certainty if the probate court's judgment stands they take their undivided share of the trust property outright whereas the executors could allocate what they were to receive under the terms of the will. However, we need not labor the point. Within the meaning of the term "adverse party" as used in the statute (G. S. 1947 Supp. 59-2405) the two persons just named were adverse parties entitled to notice in order to perfect a valid appeal and their status with respect to service of that notice will determine its validity.

In an attempt to forestall the conclusion just announced appellees attack the journal entry which they concede was signed by the probate judge and is a part of the transcript of proceeding transmitted by the probate court to the district court. They urge that at the time their notices of appeal were served the journal entry had not been signed and they did not understand judgment had been ren-

dered in favor of any one but Siebert and the guardian. In short they claim the journal entry does not speak the truth. One trouble with this claim is their notice of appeal contains a statement the probate court had entered a judgment finding that Ella had received property in trust from Dan for the benefit of his nieces and nephews and imposing a trust on all property so received. But regardless whether the journal entry is correct or not the claim is of no avail to appellees at this stage of the proceeding. This court cannot determine the terms of a judgment on controverted claims of the parties. It must assume the journal entry, signed by the judge of a court below, correctly reflects the judgment. Moreover an appellate court is not the proper forum in which to correct a judgment. Action of that character must first be instituted by a proper proceeding in the court in which it was rendered.

The question whether adverse parties were served with notice of the appeal as required by G. S. 1947 Supp. 59-2405 remains. Heretofore we have directed attention to the fact the notices of appeal specifically limit service upon the probate judge to the parties named therein—in the instant case to the guardian. This court is of the opinion the parties are bound by the express terms of their notice and cannot now be heard to say they intended to include other adverse parties.

It is pointed out that a valid appeal may be perfected by service of notice upon the probate court for all adverse parties. This must be conceded. It is then suggested appellees' proof shows service upon the probate judge for adverse parties. Assuming, without for the moment deciding, the proof of service warrants that construction we are convinced that the terms of the notice are decisive and cannot be contradicted or enlarged upon by the proof.

But our decision in the instant case need not depend entirely upon the conclusion just announced. Turning to the proof of service we note the most that can be said for it is that notice of appeal was served on the probate judge *for all parties named therein and for all persons entitled to take any interest or estate under the will*. Alfred J. Collingwood who, as we have seen is an adverse party, was not named in the will or entitled to take any interest in the estate. Neither was he a party to whom the notice of appeal itself was directed. Thus from the face of the record it clearly appears there was no service upon him of the notice of appeal as required by G. S. 1947 Supp. 59-2405.

The views heretofore expressed compel the conclusion the district court acquired no jurisdiction over the attempted appeal from probate court because of failure to serve notice on all adverse parties. It follows that orders made by that tribunal in connection with such appeal are of no force and effect and that appellant's motion challenging its jurisdiction must be sustained.

Appellees bitterly complain that to sustain the motion deprives them of the right to a trial on the merits upon a technicality and results in gross inequity. If this were an equitable proceeding— which it is not—this claim would possess more merit if it did not appear appellees are in no better position than appellant to invoke the aid of equity. They seek to defeat appellant's claim by application of one section of the statute (59-2239) while she seeks to dispose of theirs through application of another (59-2405). As it is all we can do is to give force and effect to the plain mandate of the last cited section. In view of its clear and unequivocal language to do otherwise would mean that we were substituting our judgment for that of the legislature.

In an attempt to mend their hold appellees have filed with this court a motion to amend their notice of appeal by bringing in additional parties and insist the notice may be so amended under authority of either G. S. 1935, 60-3310 or G. S. 1947 Supp. 59-2405. We do not agree. The first section just mentioned does not authorize this court to permit an amendment of a notice of appeal from the probate court to the district court and under the circumstances is not applicable. Nor do the provisions of 59-2405 permit the requested amendment. We so held in *In re Estate of Dudley,* 159 Kan. 160, 152 P. 2d 678, where we affirmed a judgment of the district court dismissing an appeal from probate court for failure to comply with another requisite to a valid appeal which—we pause to point out—was no more important if as much so as the requirement that notice of appeal must be served on adverse parties. In the opinion of that case we said:

"In this court appellant stresses the last sentence in G. S. 1943 Supp. 59-2405, which reads:

"'Whenever a party in good faith gives due notice of appeal and omits through mistake to do any other act necessary to perfect the appeal, the district court may permit an amendment on such terms as may be just.'

"The contention is that, having given a notice of appeal within time, he might give the bond two or three months after the time for appeal had expired. Appellant is not in position to present this question for the reason that he never made any request upon the district court within the purview of

this statute. We add, however, that the purpose of the quoted sentence was to prevent trivial imperfections from defeating an appeal. Certainly the court would be reluctant to say that the simple giving of a notice of appeal would justify the delay of giving any bond until after the time for appeal had expired." (pp. 163, 164.)

In conclusion it should be stated that we have not commenced to here answer all of the arguments advanced by the astute and capable counsel for the parties in support of their respective positions on appeal. Many of them deal with the merits of the case and are not mentioned for that reason. Others are based on erroneous theories respecting the status of the parties in probate court, and on appeal to the district court, and on that account have been disregarded. Numerous others material to the issues but not regarded as of sufficient importance to warrant space in the opinion have also been considered and rejected.

Finally we feel impelled to add that had decision of the question been required for the disposition of this appeal we would have no difficulty in concluding that under the facts and circumstances of this case the appellees, as executors of the estate of Ella Demoret, were "aggrieved parties" within the meaning of that term as used in G. S. 1947 Supp. 59-2404 and therefore authorized to take an appeal from the judgment rendered by the probate court.

The judgment of the district court is reversed with directions to set aside its order sustaining the special demurrer and dismiss the appeal from probate court. It is so ordered.

WEDELL, J., dissenting.

PRICE, J., not participating.