No. 41,120

(In re Estate of Fred S. Cramer, Deceased.) OTTO J. KOERNER, Administrator *Cum Testamento Annexo* of the Estate of Fred S. Cramer, Deceased, *Appellant,* v. THE DIVISION OF NATIONAL MISSIONS OF THE BOARD OF MISSIONS OF THE METHODIST CHURCH and THE DIVISION OF WORLD MISSIONS OF THE BOARD OF MISSIONS OF THE METHODIST CHURCH, *Appellees.*

(332 P. 2d 560)

Opinion filed December 6, 1958.

*Morris H. Cundiff,* of Wichita, argued the cause, and *Lee R. Meador, Dale M. Bryant, Garner E. Shriver, Glenn J. Shanahan* and *Orlin L. Wagner,* all of Wichita, were with him on the briefs for appellant.

*W. Jay Esco,* of Wichita, argued the cause, and *Lloyd F. Cooper, Dale H. Cooper* and *Ralph B. Foster,* all of Wichita, were with him on the briefs for appellees.

The opinion of the court was delivered by

FATZER, J.: This was an appeal from the probate court to the district court from an order allowing administrator's fees and attorney fees upon the final settlement of a decedent's estate. No other orders of the final settlement were appealed. The controversy was between two organizations of the Methodist Church (appellants in the district court) and the administrator *de bonis non cum testamento annexo,* hereafter referred to as administrator. The organizations were not found to be the legatees and devisees of the decedent upon the final settlement, and, so far as the pleadings or proof was concerned in the district court, were strangers to the decedent's estate. A jury having been waived, trial was to the court which made findings of fact, conclusions of law, and entered judgment for administrator's fees and attorney fees in an amount less than that allowed by the probate court.

At the outset we are confronted with a contention which must be disposed of before the merits of the appeal may be considered. The administrator insists that the district court did not have jurisdiction to entertain the appeal from the probate court, and that it

should be directed to dismiss the appeal upon the ground that the appellees in this court neither pleaded nor proved they had an interest in the controversy, hence they could not be a "person aggrieved" within the meaning of G. S. 1949, 59-2404, and had no authority to appeal. If the district court had no jurisdiction of the appeal, its findings of fact, conclusions of law, and entry of judgment are of no force and effect. (*In re Estate of Demoret,* 169 Kan. 171, 218 P. 2d 225.)

Pertinent facts are quoted and summarized: Fred S. Cramer and Nellie M. Cramer were brother and sister. Fred and Nellie each owned an undivided one-half interest in six separate tracts of real estate in Wichita. Nellie died on May 13, 1954, predeceasing Fred, leaving a will in which Fred was named as devisee and legatee. The third paragraph of her will provided that in the event Fred predeceased Nellie, or in the event Nellie and Fred died at or about the same time as a result of the same accident or casualty, the *Division of Foreign Missions* and *Division of Home Missions and Church Extension of the Methodist Church* would be her devisees and legatees. Nellie's will was admitted to probate on November 22, 1954, and Fred was appointed executor. On February 17, 1955, Fred was adjudged incompetent by the probate court of Sedgwick county and Otto J. Koerner, appellant herein, was appointed guardian of his person and estate. On March 22, 1955, Fred was removed as executor and appellant was appointed administrator of Nellie's estate. The appellant served in the capacity of administrator of Nellie's estate and guardian of Fred's person and estate until Fred's death on June 10, 1955. For the companion appeal concerning Nellie's estate see *In re Estate of Cramer* (No. 41,119), 183 Kan. 808, 332 P. 2d 554, this day decided.

Fred died testate leaving a will similar to that of Nellie, the pertinent portions of which read:

"SECOND. I hereby give, devise and bequeath all the rest and residue of my property of every kind and character, and wherever situated, unto my sister, Nellie M. Cramer, absolutely and in fee simple.

"THIRD. In the event of the death of my sister, Nellie M. Cramer, prior to my death, or in the event of the death of my said sister and myself at or about the same itme as a result of the same accident or casualty, then and in any of said events, I hereby give, bequeath and devise all of my property, both real and personal, to the *Division of Foreign Missions* and *Division of Home Missions and Church Extension of the Methodist Church.*" (Emphasis supplied.)

Fred's will was admitted to probate on June 18, 1955, and appellant was appointed administrator and continued the administration

of both estates. Certain real estate was sold pursuant to the order of the probate court and one-half of the proceeds was credited to each estate.

On January 25, 1956, counsel for the appellees wrote the administrator as follows:

"This is to advise you that this firm represents The Division of Foreign Missions and The Division of Home Missions and Church Extension of The Methodist Church and directs that all proceedings requiring notice in the future be served upon our firm in behalf of the Division of Foreign Missions and The Division of Home Missions and Church Extension of The Methodist Church."

On February 25, 1957, the probate court entered orders of partial distribution in both estates. The administrator appeared in person and with his attorneys and the devisees and legatees under Fred's will appeared by W. Jay Esco, and no other appearances were made. With respect to Nellie's estate, the order of partial distribution transferred and assigned title to her undivided one-half interest in the real property to Fred's estate pursuant to the terms of her will, and in Fred's estate, the order transferred and assigned title to all of the real property to the Division of Foreign Missions and the Division of Home Missions and Church Extension of the Methodist Church, the devisees and legatees named in his will.

On June 17, 1957, final settlement was had in both Nellie's and Fred's estates. The administrator appeared in person and with his attorneys, and W. Jay Esco appeared for the devisees and legatees, and there were no other appearances. The journal entry of final settlement reads, in part:

"The court further finds that under the will of Fred S. Cramer, deceased, the Division of Foreign Missions and Division of Home Missions and Church Extension of the Methodist Church is the devisee and legatee of all the residue of the estate, real and personal, Nellie M. Cramer having pre-deceased this testator, the date of her death being May 13, 1954."

The prayer of the petition for final settlement was granted, final settlement was ordered made and title to the real and personal property was assigned to the devisees and legatees named in the will; fees were allowed and ordered paid to the administrator and his attorneys, and the administrator was ordered discharged upon filing of receipts of payments and distributions pursuant to the journal entry of final settlement. The journal entry was signed by the probate judge, approved by the attorneys for the administrator and by W. Jay Esco as attorney for the *Division of Foreign Mis-*

*sions* and *Division of Home Missions and Church Extension of the Methodist Church.*

On June 23, 1957, the appellees in this court, the *Division of National Missions of the Board of Missions of the Methodist Church,* and the *Division of World Missions of the Board of Missions of the Methodist Church* by and through their attorney, W. Jay Esco, prepared, served and filed a notice of appeal in both Nellie's and Fred's estates,

". . . from the Order of said Court in allowance of administrator's fees and attorneys' fees of the Probate Court of Sedgwick County, Kansas, rendered in the above entitled matter on the 27th day of June, 1957, in which said Court allowed the administrator a fee of $4,500.00 and attorney fees for the administrator's attorneys in the sum of $2,500.00."

A jury being waived, trial *de novo* was by the court which, among others, made the following findings of fact and conclusions of law:

### "Findings of Fact

"3. That under paragraph three of testator's Will, *Division of National Missions of the Board of Missions of the Methodist Church* and *Division of World Missions of the Board of Missions of the Methodit Church* were the sole legatees and devisees of all property, both real and personal, of the testator, Fred S. Cramer.

"9. That order of partial distribution, dated the 25th day of February, 1957, was entered in said estate, assigning all of the real estate which remained in the estate as of said date to *Division of National Missions of the Board of Missions of the Methodist Church* and *Division of World Missions of the Board of Missions of the Methodist Church.*

"11. That an appeal from the award of administrator fee and attorneys fees of the probate court of Sedgwick County, Kansas, entered on the 27th day of June, 1957, was perfected to the District Court of Sedgwick County, Kansas." (Emphasis supplied.)

### Conclusions of Law.

"1. The Court has jurisdiction over the parties and the subject matter in this cause of action."

Thereafter the administrator moved to set aside findings of fact Nos. 3, 9 and 11 upon the ground that such findings were contrary to Fred's last will and testament and the order of final settlement from which no appeal was taken; that there was no evidence to support such findings, or that the parties attempting to appeal had any right or interest in Fred's estate, and were not the real parties in interest in the estate but were strangers to the proceeding and not a "person aggrieved." The motion to set aside the findings of fact

and conclusions of law and for a new trial being overruled, the administrator appeals.

Did the district court have jurisdiction of the appeal from the probate court? We think it did not. Pursuant to G. S. 1949, 60-3826 and Rule No. 5 of this court, the administrator certified in his abstract that,

". . . there is no evidence offered or admitted in the Probate Court, or in the District Court in the trial of the appeal from the Probate Court, that the appellants (appellees herein), namely: *The Division of National Missions of the Board of Missions of the Methodist Church and The Division of World Missions of the Board of Missions of the Methodist Church,* were or are one and the same, or identical with, *Division of Foreign Missions and Division of Home Missions and Church Extension of the Methodist Church* as named in the Last Will and Testament of Fred S. Cramer, deceased, as determined by the Probate Court to be the legatees and devisees of Fred S. Cramer, deceased, under the provisions of his Last Will and Testament."

The appellees in this court do not deny the correctness of the certificate, but seek to justify their failure to present evidence in the courts below that they are identical to the devisees and legatees named in Fred's will, and are the successors in interest to those named organizations by including in their counter abstract exhibits "A," "B," "C," and "D" purporting to be copies of the laws of the state of New York, which they claim changed the names of *Division of Foreign Missions of the Board of Missions and Church Extension of the Methodist Church* to *Division of World Missions of the Board of Missions of the Methodist Church* (Ch. 516, L. of N. Y., approved April 17, 1941; Ch. 229, L. of N. Y., approved March 25, 1953) and *Division of Home Missions and Church Extension of the Board of Missions and Church Extension of the Methodist Church* to *Division of National Missions of the Board of Missions of the Methodist Church* (Ch. 98, L. of N. Y., approved March 12, 1942; Ch. 111, L. of N. Y., approved March 17, 1953), and ask that we take judicial notice of such laws pursuant to G. S. 1949, 60-2878. By this means they seek to establish identity of and successorship to the organizations named as devisees and legatees in the will.

It will be noted that the names by which the appellees in this court were known at the time Fred's will was executed were different than the names of the organizations designated as his devisees and legatees. Thus, we are confronted with three different sets of names; those designated in Fred's will, those appellees claim they

were known by at the time the will was executed, and those which the appellees claim they are known by at the present time and under which they appealed to the district court.

A careful examination of the appellees' exhibits indicates they deal entirely with the change of names of the organizations referred to, the objects of the corporations, their purposes, organization and management, their right to sue and be sued, and other matters which are of a purely private nature. Assuming that the exhibits submitted are in fact copies of laws of the state of New York, it is clear they are not public laws but are what is known as "private" laws relating to matters which affect only the change of name, organization, powers and continuity of the appellees. (*A. T. & Santa Fe Rld. Co. v. Blackshire*, 10 Kan. 477; *Sarahass v. Armstrong*, 16 Kan. 192; *Chambers v. Atchison, Etc. Ry. Co.*, 32 Ariz. 102, 255 Pac. 1092; *Garner v. Teamsters Union*, 346 U. S. 485, 98 L. ed. 228, 74 S. Ct. 161; 82 C. J. S., Statutes, §§ 167, 169, pp. 283, 285; 50 Am. Jur., Statutes, § 12, pp. 28, 29.) The distinction between a public law and a private law is stated in Crawford, Statutory Construction (1940), § 69, pp. 101, 102, as follows:

"A public act is a universal rule that regards the whole community, or relates to the public at large. . . . The true test is whether it is concerned with the public rather than with a private interest. A private act, on the other hand, is one which operates only upon particular persons, or is concerned with the particular interest or benefit of certain individuals or classes of persons. Thus, while a public statute affects the public at large or within certain subdivisions, a private statute relates to or affects a particular person by name, or in such a manner that certain persons or classes of persons are interested in a manner peculiar to themselves and not in common with the entire community. . . ."

This court has previously had before it a law similar to those referred to in the exhibits, *i. e.*, an act incorporating the Atchison, Topeka & Santa Fe Railway Company and held it to be a private law (*A. T. & Santa Fe Rld. Co. v. Blackshire*, supra).

Although mindful that under our Judicial Notice of Foreign Laws Act (G. S. 1949, 60-2878—60-2880) we are required to take judicial notice of the *common law* and *statutes* of every state, territory and other jurisdiction of the United States (*Fischer v. Kipp*, 177 Kan. 196, 199, 277 P. 2d 598) we do not think the mandate of the statute extends to private laws of those jurisdictions. (*Sarahass v. Armstrong*, supra; *Miller v. Johnston*, 71 Ark. 174, 72 S. W. 371; *Chambers v. Atchison, Etc. Ry. Co.*, supra; *Leland v. Wilkinson*, 6 Pet. (U. S.) 317, 8 L. ed. 412.)

The importance of whether a statute is public or private in character lies in the fact that courts, generally speaking, take judicial notice of the public laws of their own state, but not so with respect to private laws. Private laws are governed by a different rule, the basis of which is that they are no part of the public laws; they are matters of fact, and parties to an action who rely upon them, or rights derived from them, must plead or prove them in the same manner as other factual issues (20 Am. Jur., Evidence, §§ 34, 35, pp. 59, 60; 31 C. J. S., Evidence, § 22, p. 538; 82 C. J. S., Statutes, § 445, p. 1022; see, generally, 23 C. J., Evidence, § 1952, note 41, pp. 135, 136). This rule was recognized and applied by this court in its early history (*Walker v. Armstrong*, 2 Kan. 198, 221; *A. T. & Santa Fe Rld. Co. v. Blackshire*, supra; *Sarahass v. Armstrong*, supra). In *A. T. & Santa Fe Rld. Co. v. Blackshire*, it was held:

"Courts do not take judicial notice of a private act of the legislature. It must be proved or pleaded, or no attention will be paid to its existence." (Syl. 2.)

In the opinion Mr. Justice Brewer said:

". . . It is sufficient reply to this objection to say that the act incorporating the A. T. & S. F. Rld. Co. is a private act, and as it was neither pleaded nor proved the court was under no obligation to notice its existence, or refer to its provisions. Courts take judicial notice of the public statutes of their own state, and these need to be neither pleaded nor proved. *But the rule is otherwise with the private laws. They are matters of proof.* In pleading them, or a right derived from them, it is sufficient under the code to refer to them by their title and the dates of their approval, and thereupon the courts take judicial notice of them: Code, § 124. Nothing of this kind was done in this case." (l. c. 487.) (Emphasis supplied.)

In *Sarahass v. Armstrong*, it was held:

"The courts do not take judicial notice of the general organization of the Methodist Episcopal Church, its administration and control over local churches of that denomination, and their property." (Syl. 1.)

We direct attention to the provisions of G. S. 1949, 60-744, which read:

"In pleading a private statute, or a right derived therefrom, it shall be sufficient to refer to such statute by its title, and the day of its approval, and the court shall thereupon take judicial notice thereof."

This statute was not repealed by implication by the enactment of our Judicial Notice of Foreign Laws Act (G. S. 1949, 60-2878, *et seq.*) and all of these statutes should be construed harmoniously

so that each has a field of operation if that can reasonably be done. Obviously this can be done. The former relates to pleading private laws and rights derived therefrom, while the latter statutes require courts to take judicial notice of only public laws. Following the general rule that a statute pertaining to a specific thing takes precedence over a general statute which might be construed to relate to it (*Wulf v. Fitzpatrick,* 124 Kan. 642, 261 Pac. 838; *Moody v. Edmondson,* 176 Kan. 116, 269 P. 2d 462; *City of Garden City v. Miller,* 181 Kan. 360, 368, 311 P. 2d 306), we hold that the effect of these statutes when construed together is that judicial notice will be taken of foreign public laws, but that all private laws, whether of a sister state, territory or act of Congress, or of our legislature, must be pleaded or proved by the party asserting them, in the ordinary manner. This court cannot and will not, upon appellate review, make inquiry as to the facts of a private law, if evidence of their existence and validity is not found in the record and presented and discussed in the briefs on appeal.

While it is unnecessary for any persons aggrieved by an order, judgment, decree or decision of the probate court to present their defenses in that court or to appear therein (G. S. 1949, 59-2404), nonetheless, when they attempt to appeal to the district court they have the burden to affirmatively establish by competent evidence their right or interest in the estate, which was adversely affected. Where, as here, the parties attempt such an appeal and rely upon private laws of a sister state, which were neither pleaded nor proved, to establish their right or interest in the estate and there is nothing in the record tending to show they are identical to or the successors of the organizations named as the devisees and legatees in the will, they are not a "person aggrieved" within the meaning of G. S. 1949, 59-2404, and have no authority to maintain the appeal. Consequently, under the record, the district court had no jurisdiction of the appeal and should have dismissed it upon the conclusion of the trial. It follows that its findings of fact and conclusions of law and entry of judgment are without force and effect and are a nullity (*In re Estate of Demoret,* supra).

The judgment of the district court is reversed with directions to set aside the judgment and the cause is remanded with instructions to the district court to dismiss the appeal and to certify that order to the probate court.

It is so ordered.